Filed 7/26/16

CERTIFIED FOR PARTIAL PUBLICATION[*]

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ARMANDO T. LOYA,<br><br>    Defendant and Appellant. | F069487<br><br>(Super. Ct. Nos. BF144483A &<br>BF151668A)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County. John W. Lua, Judge.

C. Matthew Missakian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Marcia A. Fay, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of part I of the Discussion.

## **INTRODUCTION**

On the day set for jury trial, appellant Armando T. Loya contemplated a plea agreement negotiated with the prosecution for a principal four-year prison term that involved disposition of both cases summarized below. He entered into a protracted and mutually frustrating discussion with the trial judge, who asked multiple times if appellant wanted to plead or proceed to trial. Appellant, however, principally questioned why he could not enter a plea of not guilty by reason of insanity (NGI), which was a question he had raised on previous occasions. Without stating any reason, and just after appellant indicated his desire to take the plea agreement, the court said it would not approve the plea and withdrew it from further consideration. Trial commenced.

In Bakersfield Superior Court case No. BF151668A[1] (the present matter), a jury convicted appellant of reckless evasion of a peace officer (Veh. Code, § 2800.2; count 1); hit and run resulting in property damage (Veh. Code, § 20002, subd. (a); count 2); driving under the influence of a drug (Veh. Code, § 23152, former subd. (a); count 3); being under the influence of a controlled substance (Health & Saf. Code, § 11550, subd. (a); count 4); resisting or delaying a peace officer (Pen. Code, § 148, subd. (a)(1); count 6); and driving with a suspended license (Veh. Code, § 14601.1, subd. (a); count 7). The jury found him not guilty of vandalism (Pen. Code, § 594, subd. (b)(2)(A); count 5). The trial court found true that appellant had suffered a prior strike and four prior prison terms. Appellant was sentenced to an aggregate term of 10 years in state prison.

In companion case No. BF144483A, appellant was found in violation of probation and was sentenced to six years in state prison, to be served concurrently with the 10 years imposed in the case above.

---

[1]     Further references to case numbers are to Bakersfield Superior Court case numbers unless otherwise indicated.

On appeal, appellant raises four issues.  We find merit to his claim that the trial court abused its discretion in rejecting the plea bargain in the absence of any stated justification.  We reverse the judgment and remand for further proceedings consistent with this opinion.  However, due to a lack of prejudice, we reject appellant's contentions that he was denied his statutory right to plead NGI or that the trial court abused its discretion in denying two motions pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*).  Finally, in light of the remand, we do not reach appellant's last issue that he was denied the effective assistance of counsel and due process.

## BACKGROUND

### I.      Trial facts from the present matter

Appellant did not present any evidence.  The prosecution established the following relevant facts.

On November 9, 2013, appellant drove through a stop sign in Bakersfield, and then failed to yield when police officers pursued him in marked police vehicles with flashing emergency lights and sirens.  During the pursuit, appellant drove through four red lights, travelled 60 to 70 miles per hour, and swerved around other vehicles.  Officers observed appellant "bouncing up and down" on his driver's seat, and he was gesturing with his hands as if he was waving at the pursuing officers.  When the chase entered a residential neighborhood, officers cancelled the high-speed pursuit, turned off their lights and sirens, and reduced their speeds.  They continued to follow appellant at a safe speed.  Appellant initially pulled away, but then began to slow down.  During a turn, appellant lost control of his vehicle and struck a chainlink fence.  He ran from his vehicle.

Officers chased appellant on foot.  He ignored officers' commands to stop and continued to flee.  At one point, appellant looked back at an officer after the officer yelled for him to stop, but appellant continued to run away.  Officers lost sight of appellant after he jumped a fence.  Law enforcement established a perimeter.  About 30 to 40 minutes later, officers located appellant hiding in a parked car in a nearby apartment complex.  He

was lying on the floorboard on his chest and side, trying to be as low as possible between the back passenger seat and the front seats. He was hiding under articles of clothing. He failed to comply with officers' commands and resisted efforts to be arrested. After a brief struggle, appellant was removed from the vehicle and handcuffed. After he was restrained, appellant's face began to appear pale and he was sweating profusely. He became unresponsive and was transported to a hospital.

A physician determined appellant was unresponsive due to a methamphetamine coma. A blood test confirmed that appellant was impaired due to this drug in his system.

After his arrest, appellant placed a telephone call from county jail to an acquaintance. The call was recorded and played for the jury. Appellant said he fled from police because he had "shit" in his car.

## II. Procedural history of the present matter

Given the importance to the issues on appeal, we set out in some detail the procedural history.

### A. Competency questions arise

On November 26, 2013, criminal proceedings were suspended for the purpose of determining if appellant was competent to stand trial and cooperate with defense counsel. On January 3, 2014, the court found appellant competent and criminal proceedings were reinstated.

### B. The *Marsden* hearings

Four *Marsden* hearings occurred prior to trial. Each is summarized below as relevant to the issues raised in the present appeal.

#### 1. The first hearing

The first *Marsden* hearing occurred on November 26, 2013 (on the same day defense counsel requested a competency evaluation). Appellant raised claims regarding his appointed counsel that are not relevant to the present appeal. The court found no basis to substitute counsel and denied appellant's motion.

4.

### 2. The second hearing

The second *Marsden* hearing occurred on January 3, 2014, during which defense counsel said appellant had been diagnosed with paranoid schizophrenia and bipolar disorder, and had been previously found incompetent and sent to Patton State Hospital during his previous case.[2]  Defense counsel stated:

> "[Appellant] also told me he wanted to plea [NGI] at the prelim, and I told him I wouldn't—I didn't want to do that at the prelim because I didn't think it would be—I didn't think it would change the prelim, that would be a call the trial attorney would have to make.

> "But that, combined with him telling me he had paranoid schizophrenia issues combined with him believing that I lied to him when I don't believe I ever lied to him, and his not wanting to communicate with me, made me believe that there was enough information to declare a doubt."

After hearing further comments, the court denied the *Marsden* motion.

### 3. The third hearing

On January 16, 2014, a third *Marsden* hearing took place.  During the hearing, defense counsel stated the following:

> "[Appellant] also told me that he was schizophrenic which when I interviewed him before the first setting of the case, at which time I—it seemed that we could have communication and he seemed lucid and I didn't think I needed to do a [Penal Code section] 1368 [motion].  But he told me he wanted to plead NGI after the *Marsden* and because he seemed irrational and I had doubts about—if—I began to have doubts about his ability to help—to help—to help with his representation and I spoke with my supervisor and I thought that I should [file a Penal Code section 1368 motion for] him at that time."

---

[2]    In companion case No. BF144483A, appellant was found incompetent to stand trial or cooperate with counsel and, on or about December 19, 2012, he was committed to Patton State Hospital.  On May 31, 2013, he was found competent to stand trial and able to cooperate with counsel.  Criminal proceedings were reinstated.  After his competency was deemed restored, his appointed counsel asked for an additional evaluation pursuant to Penal Code section 1368, which was denied.

After hearing further comments, the court granted the *Marsden* motion, finding that the attorney-client relationship had broken down.

### 4. The fourth hearing

On April 16, 2014, the matter was transferred from the presiding department to the trial court. At approximately 10:13 a.m., appellant's fourth *Marsden* hearing commenced. Appellant made the following comments:

> "I asked [my new defense counsel] about an NGI plea. He told me there's no way he would change my plea to an NGI plea because a judge wouldn't accept it, which isn't right, because that's a plea—you can change your plea to that anytime because there's four pleas, and he lied to me about that."

The court later informed appellant that defense counsel's statement that the judge would not accept an NGI plea at this time was true. The following exchange occurred:

> "[APPELLANT]: So you're telling me that I cannot change my plea to an NGI plea, never, because I went to Patton State Hospital, and they taught us that there's four pleas. They told us that we could change our plea at any time to an NGI. You're telling me that Patton State Hospital—I went there—that they lied to me and they told me a lie, then, because we went there—I went there so they could teach me about the court; right? They taught me who the judge is, who my attorney is, and about the four pleas. So you're telling me that they lied to me?
>
> "THE COURT: I'm not telling you—I'm not telling you anything about what they told you. I'm telling you that [defense counsel]—
>
> "[APPELLANT]: That's what he taught me—
>
> "THE COURT: [Appellant]. [Appellant].
>
> "[APPELLANT]: —when I was at Patton State Hospital for a [Penal Code section] 1368; so then they're reteaching me all this stuff. I don't understand.
>
> "THE COURT: [Appellant], you're going to have to be quiet for a second. When I'm talking, you don't talk. The young lady before me is tasked with writing down everything that's said in court. She can't do it if

6.

two of us are talking at the same time. [¶] Do you understand that? Do you understand that?

"[APPELLANT]: If I say I understand, are you going to—are you going to listen to me, are you going to tell me bullshit? Are you a fake judge or a real judge? Because everything is fake in this court. Every court I been to is fake, it's been fake stuff.

"THE COURT: [Appellant], listen. I'm trying to be as patient as possible with you.

"[APPELLANT]: You know, when I'm the only innocent one in this courtroom.

"THE COURT: Okay.

"[APPELLANT]: And I don't care. I don't care what you do. I don't care what these bailiffs do. I don't care what she does. I don't care. It don't reflect on me, you know what I mean? I'm my own man, you're your own man, she's her own woman.

"THE COURT: [Appellant], are you done?

"[APPELLANT]: No. I'm trying to explain to you.

"THE COURT: I understand it. Are you done?

"[APPELLANT]: And then I got these motherfuckers right here, these people against me.

"THE COURT: [Appellant,] we're going to take a brief break. I'm going to order you [to] leave the courtroom until you're ready to behave appropriately in this courtroom. We'll be in recess five minutes."

After a recess, appellant's counsel explained why he believed appellant was confused, and defense counsel indicated a possible plea agreement had been discussed with the prosecution. Appellant had counteroffered a four-year prison term on the felony evasion charge, concurrent time for the misdemeanors, and the four years would be served concurrently with the six-year probation revocation case. The prosecution had accepted that offer, but then appellant had concerns regarding how the time would be served and how his credits in the underlying revocation matter would be applied.

7.

The following relevant comments occurred:

"[DEFENSE COUNSEL]: Your Honor, [appellant's] charged with a variety of offenses. I would suggest that perhaps Count 1 there may be a legal basis for an NGI plea if he were, at the time of the alleged incident, unable to form the intent to evade or avoid the police or elude capture.

"The context of this request, however, was—it initiated—originated when I had a conversation with [appellant] at the county jail, and he was seeking potential ways to prolong or delay the conclusion of this case.

"He has expressed to me on repeated occasions that he does not wish to go to prison and he would do anything he can to avoid going to prison. Then he suggested to changing his plea to [NGI].

"I explained to him that that does not apply to all these charges, and I'm not even certain it would apply to Count 1, although there may be a plausible legal theory that he could not have formed the intent at the time. But many of these charges are simply general intent charges, it would not be an applicable plea. I also did not believe that that would be a genuine legal strategy to deliberately attempt to delay the proceedings in this court by manipulating the process and changing the plea on one or two charges to NGI for that stated purpose."

Appellant countered that a psychiatrist, and not his defense counsel, had to make the determination of his mental state. Appellant noted he had a mental health history and stated he had a mental illness.

The judge spoke with appellant at length regarding the mechanics of the pending plea offer and whether appellant was interested in accepting it. Appellant indicated a willingness to accept it. The court concluded that defense counsel had reasonably represented appellant and would continue to do so during the proceedings. The court determined that defense counsel was ready and able to proceed with trial, appellant was responsible for any breakdown in communication, and appellant could still be represented effectively by his defense counsel. The court found that appellant's stated dissatisfactions with his counsel's performance had not met the required burden of proof. The court denied the *Marsden* motion.

8.

## C.     The April 16, 2014, open court proceeding

Upon conclusion of the fourth *Marsden* hearing, and at approximately 10:56 a.m., appellant and counsel were present in open court, and a possible change of plea was discussed. A brief recess was taken to allow defense counsel and appellant to discuss that further. At approximately 11:37 a.m., appellant and counsel were again present in open court.

Appellant complained that defense counsel was lying to him about custody credits. Defense counsel explained the custody credit issues to the court, and the court tried to explain the calculations. When those discussions ended, appellant, through his counsel, asked the court for an indication whether it would strike a prior strike, which the court declined to do. The court, however, stated it would entertain a formal *Romero*[3] motion. Appellant asked if his prison priors would be used against him if he went to trial and lost. The court stated that the prosecution would likely prove all of the prison priors alleged, and the judge would consider them at sentencing. The following relevant exchange then occurred:

> "[APPELLANT]:  Why can't I change my plea to NGI?
>
> "THE COURT:  It wouldn't help you at all with those allegations. The Court would require more than just the plea. Procedurally—
>
> "[APPELLANT]:  I want to change my plea to NGI, and I would like to go to trial, that's what I would like to do, but he's telling me that I can't. That's why I wanted to fire my attorney.
>
> "THE COURT:  [Appellant]—
>
> "[APPELLANT]:  Other than that, I have to sign this deal and—
>
> "THE COURT:  [Appellant], if you want to go to trial, we can go to trial.
>
> "[APPELLANT]:  But I want to change my plea to an NGI plea.

---

[3]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

"THE COURT: That's not going to happen. Procedurally it would be a different format, for one; and two, the Court would require more—

"[APPELLANT]: Why do they teach you that in Patton about NGI? Why do they [t]each you that at Patton, NGI?

"THE COURT: [Appellant], I'm going to ask you one time. You've had a quite a bit of time to consider whether to plea in this case or not. You've certainly asked [defense counsel] questions involving a negotiated disposition, you've also asked the Court on the record questions involving the potential disposition; so I'm going to ask you this one time. Do you want a plea in this case?

"[APPELLANT]: I want to plea NGI.

"THE COURT: All right. Do you want to take the deal that you have counteroffered in this case?

"[APPELLANT]: If I can't plead NGI—I mean, I want to plead NGI, really, that's the plea that I want to give, an NGI plea, but since I don't got a crooked smile and I can't spit right now 'cause, you know, that's what everybody wants, I'm going to spit or do a crooked smile, I mean, somebody behind me is telling me what to say, you know—

"THE COURT: [Appellant], I'm asking you, do you want to sign the paperwork—

"[APPELLANT]: I thought you were the judge. I thought this was your courtroom, you know.

"THE COURT: It is. [¶] Do you want to plea in this case and resolve the case or do you not?

"[APPELLANT]: If I have to. I mean, I can't plead NGI. I'm trying to plead NGI. I mean, that's why—

"THE COURT: [Appellant], not guilty by reason of insanity is not before me at this time.

"[APPELLANT]: But it's a plea. It's a plea. It says on the thing I can change my plea at any time. That's like a not guilty plea because it's not guilty by insanity, isn't it? Can you explain that for me? I'm already done signing it. Look, I'm initialing it right now, but I feel that—I feel that—

10.

"THE COURT: [Appellant], it's up to you as to whether you want to plea in this case.

"[APPELLANT]: I feel that I'm not getting the—

"THE COURT: If you don't want to plea in this case, that's your right, you don't have to. You can go to jury trial, that is an absolute right you have. No one will hold it against you. Do you want to go to jury trial? It's up to you and only you.

"[APPELLANT]: How does an NGI work, though? Why can't I plead that, though?

"THE COURT: NGI is not before me. I'm not discussing that with you.

"[APPELLANT]: What do you mean it's not before you?

"THE COURT: That is not an issue before me right now. This matter was sent here for jury trial; so we are either going to have a jury trial or you're going to plea. If you're not going to plea—

"[APPELLANT]: That is a plea, though.

"THE COURT: Yeah, okay. [Appellant], I can appreciate—

"[APPELLANT]: Here, I'll sign.

"THE COURT: I can appreciate your efforts. The Court's not going to accept the plea in this case, counsel, we're going to go forward with trial.

"[APPELLANT]: I already filled it out, look.

"THE COURT: [Appellant], part of that plea negotiation is the Court has to accept it. I'm not going to accept it. We're done.

"[APPELLANT]: I want to take it. I mean, I'm signing for it right now.

"THE COURT: Too bad. [¶] Counsel, I'll see you both back at 1:30."

After the lunch recess and back on the record, defense counsel indicated appellant wanted to accept the plea bargain and was prepared to address the court regarding his conduct just prior to the court rejecting the plea bargain. The judge responded that the

11.

plea had been "taken off the table. We're going to go forward with a trial." Appellant attempted to speak, but the court admonished him to speak to his defense counsel if he wished to be heard. The proceeding continued with a discussion on motions in limine.

## DISCUSSION

## I. Prejudice Did Not Result From Appellant's Inability To Plead NGI[*]

Appellant contends he was prejudicially denied his statutory right to plead NGI. He maintains his sentence is void or, in the alternative, it must be vacated and the matter remanded for a trial regarding his sanity.

### A. Standard of review

The denial of the statutory right to plead NGI is an error of state law requiring reversal only if it is reasonably probable the appealing party would have obtained a more favorable result in the absence of the error. (*People v. Henning* (2009) 178 Cal.App.4th 388, 398 (*Henning*), citing *People v. Watson* (1956) 46 Cal.2d 818, 836.) However, a federal due process violation can occur when a defendant is unable to receive full consideration of the facts regarding his desired insanity defense. In such a situation, reversal is required unless the error was harmless beyond a reasonable doubt. (*Henning*, *supra*, at p. 398, citing *Chapman v. California* (1967) 386 U.S. 18, 23–24 (*Chapman*).)

### B. Analysis

There are six kinds of pleas to an indictment or information, including not guilty and/or NGI. (Pen. Code, § 1016, subds. 1–6.) "A defendant who does not plead [NGI] shall be conclusively presumed to have been sane at the time of the commission of the offense charged; provided, that the court may for good cause shown allow a change of plea at any time before the commencement of the trial." (*Id.*, subd. 6.)

Although defense counsel generally has the right to make tactical choices regarding the formation and presentation of a defense, the defendant ultimately controls

---

[*] See footnote, *ante*, page 1.

12.

the decision to plead guilty or not guilty. (*Henning*, *supra*, 178 Cal.App.4th at p. 397.) As a result, Penal Code section 1018 requires every plea to be personally entered or withdrawn by a defendant in open court. The defendant, and not defense counsel, controls the decision to enter or withdraw a plea of NGI, even if that decision is tactically unwise. (*People v. Clark* (2011) 52 Cal.4th 856, 963 (*Clark*).)

The parties dispute whether appellant unequivocally informed the trial court that he wanted to enter an NGI plea. The parties also dispute whether the trial court was required to accept appellant's NGI plea or whether it was necessary to establish "good cause" for a change in plea pursuant to Penal Code section 1016 ("the court may for good cause shown allow a change of plea at any time before the commencement of the trial"). We need not, however, resolve these issues. Even when we presume error occurred, prejudice is lacking.

"'A plea of [NGI] refers to the defendant's mental state at the time of the commission of the crime, a mental state which is distinguishable from that which is required of a defendant before he may be allowed to stand trial.' [Citation.]" (*Henning*, *supra*, 178 Cal.App.4th at p. 396.) Under California law, insanity means the defendant was incapable of distinguishing right from wrong, or knowing or understanding the nature of his act. A bifurcated trial occurs when simultaneous pleas of not guilty and NGI are entered. It is first determined whether the defendant committed the charged offenses and, if so, whether he was insane at that time. (*Ibid.*) "The defendant bears the burden of proving insanity at the time of the offense by a preponderance of the evidence. [Citation.]" (*Id.* at p. 401.)

As an initial matter, an NGI defense does not apply when it is based solely on an addiction to, or abuse of, intoxicating substances. (Pen. Code, § 29.8; CALCRIM No. 3450.) Further, an insanity defense is not available in a probation revocation proceeding. (*People v. Harrison* (1988) 199 Cal.App.3d 803, 809–810.) Accordingly, appellant could not raise an NGI defense solely based on any addictions to or abuse of

13.

intoxicating substances, and he was unable to use an NGI defense in companion case No. BF144483A.

Appellant relies on *Clark*, *supra*, 52 Cal.4th 856, and *People v. Clemons* (2008) 160 Cal.App.4th 1243 (*Clemons*) to establish prejudice. In *Clark*, the defendant asserted that the trial court erred when he was allowed to plead NGI over his attorney's objection. (*Clark*, *supra*, at p. 962.) He argued on appeal that no credible evidence supported his plea. The Supreme Court disagreed, determining the record showed an NGI defense was not necessarily futile. Although defense counsel had represented in the trial court that none of the defense experts found a viable sanity defense, all but one expert evaluated the defendant for a purpose other than his sanity at the time of the crimes. The defendant claimed a loss of memory of the events surrounding the crimes. Finally, the Supreme Court noted the defense experts' reports "undoubtedly cataloged" the defendant's history of numerous admissions to psychiatric facilities. (*Id.* at p. 964.) *Clark* determined the trial court properly permitted the defendant to enter the plea against his counsel's advice. (*Id.* at p. 963.)

Similarly, in *Clemons*, the defendant possessed a razor blade while in custody on other charges at the courthouse. He cut his arm deeply, exposing muscle, and the laceration required 18 stiches. His arms were scarred from similar wounds. (*Clemons*, *supra*, 160 Cal.App.4th at pp. 1245–1256.) During criminal proceedings regarding his possession of the razor blade, the defendant unequivocally told the trial court that he wanted to plead NGI and his counsel would not let him. The trial court informed the defendant that was an issue for defense counsel to raise. (*Id.* at p. 1251.) On appeal, the *Clemons* court found error, noting the defendant had the right to enter the plea of his choice. (*Id.* at p. 1252.) The Court of Appeal noted that doctors had examined the defendant, but did so to determine present competency to stand trial and not regarding his sanity at the time of the crime. The reports failed to address the defendant's mental condition at that time or what medication he had taken. The defendant had a history of

14.

diagnoses of and hospitalizations for mental illness. Moreover, the *Clemons* court determined that the defendant's abnormal behavior provided some evidence of insanity even if no experts supported an NGI defense. He self-inflicted a deep wound to his arm and "grinned sheepishly" at sheriff's deputies when his wound was discovered. (*Id.* at p. 1253.) *Clemons* held that the defendant was entitled to a new trial because his right to enter the plea of his choice was infringed and there was evidence to support that choice. (*Ibid.*)

Here, the circumstances of appellant's flight indicate he understood the wrongful nature of his actions. When officers turned off their lights and sirens and reduced their speeds upon entering a residential neighborhood, appellant initially pulled away but then began to slow down. When appellant lost control of his vehicle, he ran from officers and ignored commands to stop. At one point, appellant looked back at a pursuing officer who had ordered him to stop, but appellant continued to run away. He jumped over a fence and hid in a parked car in a nearby apartment complex. Inside the car, appellant was observed laying on the floorboard on his chest and side, trying to be as low as possible between the back passenger seat and the front seats. He was concealed under several articles of clothing. After he was taken into custody, appellant made a telephone call from the county jail and informed an acquaintance that he fled from police because he had "shit" in his car.

Unlike the defendant in *Clemons*, appellant's behavior during this crime did not demonstrate insanity, but rather a strategic effort to avoid capture that showed intentional thinking. His subsequent telephone call confirmed he knowingly fled from police. Unlike the defendant in *Clark*, appellant did not claim a loss of memory of the events surrounding the crimes, but offered an explanation regarding why he fled from officers. The circumstances surrounding appellant's crime establish he was capable of distinguishing right from wrong, and knew or understood the nature of his act. Both *Clark* and *Clemons* are distinguishable.

15.

Appellant's additional arguments are not persuasive. He points to his lack of competency in companion case No. BF144483A and the competency request that occurred during the pendency of the present matter. He notes he made strange comments during the pendency of this prosecution and the postconviction probation report states he suffers from "bi-polar and schizophrenia and is taking medication for these ailments." He argues his behavior during this crime may have indicated mental illness when he was "bouncing up and down" on his driver's seat and gesturing with his hands at the pursuing officers.

Although an NGI plea had evidentiary support, appellant's behavior during the commission of the crime and his postarrest statement establish a rational and knowing attempt to avoid police and detection. Based on this record, any error associated with the failure to permit appellant to plead NGI was harmless beyond a reasonable doubt. Accordingly, the judgment will not be reversed for this claim of error.

## II. Prejudice Did Not Result From The Denial Of The *Marsden* Motions

Appellant argues the trial court abused its discretion when it failed to grant two of his requested *Marsden* motions to appoint new counsel after counsel refused to allow an NGI plea. He contends the error was prejudicial, requiring reversal.

### A. Standard of review

The denial of a *Marsden* motion is reviewed on appeal for an abuse of discretion. (*People v. Streeter* (2012) 54 Cal.4th 205, 230 (*Streeter*).) In this context, an abuse of discretion does not exist unless the defendant's right to assistance of counsel was substantially impaired from the failure to replace the defendant's attorney. (*Ibid.*)

The standard for prejudice regarding a denied *Marsden* motion is under *Chapman*, *supra*, 386 U.S. 18. (*People v. Solorzano* (2005) 126 Cal.App.4th 1063, 1071.) Under that standard, we must ask whether the denial was harmless beyond a reasonable doubt. (*Ibid.*)

16.

**B.      Analysis**

When a defendant seeks to discharge appointed counsel pursuant to *Marsden*, the trial court must permit an opportunity for the defendant to explain the reasons and provide specific instances of inadequate performance.  (*Streeter*, *supra*, 54 Cal.4th at p. 230.)  The requested relief should be granted if appointed counsel is not providing adequate representation.  Relief should also be granted if the defendant and counsel have an irreconcilable conflict so that ineffective representation is likely to occur.  (*Ibid.*)  A trial court should substitute new counsel upon learning in a *Marsden* hearing that defense counsel refuses to allow a defendant to exercise his or her right to enter an NGI plea. (*Henning*, *supra*, 178 Cal.App.4th at p. 404.)

Appellant asserts his *Marsden* motions in the second and fourth hearings should have been granted because his attorneys would not permit an NGI plea.  He argues the record does not demonstrate that his counsel consulted with experts or otherwise investigated his sanity at the time of this crime.  He maintains it cannot be determined that the trial court's denial of his *Marsden* motions was harmless beyond a reasonable doubt in light of his history of diagnosed mental illness, his strange behavior during the proceedings, and his conduct during the crime's commission.  He relies upon *Henning*, *supra*, 178 Cal.App.4th 388, to establish prejudice.

Respondent contends the trial court did not abuse its discretion in denying the two challenged *Marsden* motions, also citing *Henning*, *supra*, 178 Cal.App.4th 388. Respondent asserts neither counsel in both disputed *Marsden* hearings "refused to allow appellant to enter an NGI [plea] over his unequivocal request."  Respondent notes that defense counsel raised concerns in the fourth *Marsden* hearing that appellant sought the plea only to delay the proceedings and the merits of that defense were unclear.  In the alternative, respondent maintains no prejudice resulted even if error occurred.

We need not resolve the parties' dispute regarding whether or not an abuse of discretion occurred in the trial court's denial of the two challenged *Marsden* hearings.

17.

Even when we presume, without so deciding, that error occurred in one or both hearings, this record does not establish prejudice. As discussed in part I above, appellant was unable to use an insanity defense in the probation revocation proceedings in companion case No. BF144483A. (*People v. Harrison, supra*, 199 Cal.App.3d at pp. 809–810.) Further, his actions during the commission of this crime showed a strategic effort to avoid capture. His subsequent telephone call confirmed he knowingly fled from police.

*Henning* does not alter our conclusion. In *Henning*, the Court of Appeal found error when the trial court failed to replace appointed counsel following a *Marsden* hearing. Counsel refused to allow an NGI plea despite the defendant's wish to do so. (*Henning, supra*, 178 Cal.App.4th at pp. 397–398.) However, the *Henning* court determined the record did not establish a credible basis for an insanity defense. (*Id.* at p. 401.) The defendant's behavior during the crime established he understood his actions were wrong, and the record did not demonstrate any evidence of a mental defect or condition rendering him unable to appreciate the wrongfulness of his conduct. Defense counsel consulted with multiple experts, all of whom concluded the defendant was not insane at the time of the offense. (*Ibid.*) As such, the trial court's error was deemed harmless. (*Id.* at p. 402.)

Here, although this record does not reflect that appellant's counsel pursued an NGI defense, appellant's behavior and postarrest statement establish he was capable of distinguishing right from wrong, and knew or understood the nature of his actions. It is beyond a reasonable doubt that any presumed error associated with the *Marsden* hearings was harmless. Accordingly, appellant's convictions will not be reversed for this claim of error.

**III.** **The Trial Court Abused Its Discretion When It Rejected The Proposed Plea Bargain In The Absence Of Any Justification**

Appellant asserts the trial court abused its discretion when it refused to accept the plea bargain. He contends the court's refusal was not based on any disagreement about the substance of the plea deal, but over frustration with his equivocating.

**A.** **Standard of review**

Without citing any specific authority, both parties take the position that an abuse of discretion standard is appropriate in analyzing this claim. We agree because a deferential abuse of discretion standard is used to analyze whether a trial court properly accepted a conditional plea of guilty or no contest pursuant to Penal Code section 1192.5. (*People v. Holmes* (2004) 32 Cal.4th 432, 443.) Similarly, and by analogy, a deferential abuse of discretion standard is also used to review a trial court's ruling denying a mistrial. (*People v. Bolden* (2002) 29 Cal.4th 515, 555.) An abuse of discretion is present when a court's ruling is "'outside the bounds of reason.'" (*People v. Ochoa* (1998) 19 Cal.4th 353, 408.)

**B.** **Analysis**

Appellant argues the court initially intended to approve the plea bargain because it discussed the plea agreement with appellant during the fourth *Marsden* hearing, and the court gave appellant and defense counsel additional time to confer about it. Following that recess, the court responded to appellant's inquiries about time credits, about whether the court would consider a *Romero* motion, and the court confirmed with the prosecution that the People were still in agreement with the pending offer. Appellant contends the trial court's abrupt decision to reverse itself and refuse the plea bargain was an abuse of discretion. He maintains the court's refusal did not arise over concerns of the bargain's terms or because the plea interfered with a court policy, but rather over "exasperation" regarding appellant's "incessant questions about pleading NGI."

19.

Respondent contends neither appellant nor the trial court accepted the plea bargain, and the court did not withdraw the plea from consideration because of prejudice against appellant. Instead, respondent asserts the court withdrew the offer because appellant continued to equivocate regarding its acceptance. Respondent maintains that "appellant's issues with the plea bargain had nothing to do with an NGI plea, but rather pertained to custody credits and whether the court would strike his strike and prison priors." We find merit to appellant's concerns and reject respondent's contentions.

Plea negotiations and agreements are an integral, essential and accepted component of our criminal justice system. (*People v. Segura* (2008) 44 Cal.4th 921, 929 (*Segura*).) Such agreements promote speed, economy and the finality of judgments. (*Ibid.*) The process involves an agreement negotiated by the People and the defendant, which requires judicial approval as an essential condition precedent to the bargain's effectiveness. (*Id.* at pp. 929–930.)

A court may set a deadline in the pretrial process for the acceptance of a plea bargain to facilitate effective calendar management. (*People v. Cobb* (1983) 139 Cal.App.3d 578, 581.) A "trial court may decide not to approve the terms of a plea agreement negotiated by the parties." (*Segura*, *supra*, 44 Cal.4th at p. 931.) If the court believes the agreed-upon disposition is not fair, it may reject the bargain, but it cannot change the agreement without the consent of the parties. (*Ibid.*) "[Penal Code] section 1192.5 impliedly vests a court with 'broad discretion to withdraw its prior approval of a negotiated plea.'" (*People v. Stringham* (1988) 206 Cal.App.3d 184, 199.)

"'Judicial discretion'" in this context has been described by our Courts of Appeal as a power exercised to award justice based upon reason and law. (*People v. Stringham*, *supra*, 206 Cal.App.3d at p. 199.) When either law or a fixed rule are lacking, a judge is to decide a question with a view of expediency, or in the interests of equity and justice. "'The term implies absence of arbitrary determination, capricious disposition or whimsical thinking. It imports the exercise of discriminating judgment within the bounds

of reason. Discretion in this connection means a sound judicial discretion enlightened by intelligence and learning, controlled by sound principles of law, of firm courage combined with the calmness of a cool mind, free from partiality, not swayed by sympathy or warped by prejudice or moved by any kind of influence save alone the overwhelming passion to do that which is just.'" (*Id.* at p. 200.)

Our Supreme Court has stated that trial courts, when exercising discretion to approve or reject proposed plea bargains, are charged to protect and promote the public's interest in protecting victims of crimes, vigorous prosecution of the accused, and imposing an appropriate punishment. (*In re Alvernaz* (1992) 2 Cal.4th 924, 941 (*Alvernaz.*) As a result, "a trial court's approval of a proposed plea bargain must represent an informed decision in furtherance of the interests of society [citation]; as recognized by both the Legislature and the judiciary, the trial court may not arbitrarily abdicate that responsibility." (*Ibid.*)

Here, appellant made it clear he was accepting the plea agreement. First, appellant stated "I'll sign" before the court said it was not going to accept the plea. After the court's statement, appellant said he had already filled out the change of plea form, and said, "I want to take it. I mean, I'm signing for it right now." The court responded, "Too bad."

Second, after the lunch recess, appellant stated through defense counsel that he sincerely desired to take advantage of the plea bargain. The court said "that option has been taken off the table. We're going to go forward with a trial."

At no point did the trial court state that appellant's negotiated plea agreement was unfair or contrary to the public interest. The trial court did not indicate why the plea bargain was unacceptable. According to the record, the jury pool was not present in the courtroom that day until approximately 3:59 p.m., after the parties concluded motions in limine. This record shows an arbitrary rejection of the plea agreement and a failure to exercise the required judicial discretion. (*Alvernaz*, *supra*, 2 Cal.4th at p. 941.)

Accordingly, the trial court abused its discretion. We now turn to the subject of the appropriate remedy.

Appellant requests a remand so he can decide whether to accept the previously negotiated agreement and, if he accepts it, the trial court should impose that sentence unless a finding is made that the disposition is unacceptable based on legitimate grounds. If he does not wish to accept the plea bargain, or if the court declines to approve it for valid reasons, his conviction should be entirely vacated and the proceedings restored to the original status quo. He asserts that the probation case should be incorporated within this remedy as the negotiated disposition included both cases. He cites *People v. Kaanehe* (1977) 19 Cal.3d 1, 13 (*Kaanehe*) to support his approach.

Respondent contends specific performance of the plea bargain is not an appropriate remedy even if error occurred. Respondent generally cites *Alvernaz*, *supra*, 2 Cal.4th 924. Although neither party's Supreme Court case is on point, we take guidance from these opinions as they discuss how and under what circumstances a previous plea agreement should be enforced.

In *Kaanehe*, the defendant appealed from a judgment entered upon negotiated pleas of guilty. The Supreme Court determined that the prosecution breached the plea bargain agreement and concluded that the defendant was entitled to be rearraigned for resentencing or, at his option, to withdraw his guilty pleas and be arraigned again on all charges. (*Kaanehe*, *supra*, 19 Cal.3d at pp. 5–6.) The breach occurred when the prosecutor made recommendations to the trial court regarding the imposition of a prison sentence despite agreeing to give up that right. (*Id.* at pp. 11–13.)

Both the People and a defendant may seek specific enforcement. The remedy depends on the nature of the breach and which party seeks to enforce it. When the prosecutor refuses to comply with the agreement, specific enforcement would be an order directing the prosecutor to fulfill the bargain. When the trial court refuses to sentence according to the agreement, specific enforcement would direct the judge to resentence the

defendant according to the plea bargain. "The effect is to limit the remedy to an order directing fulfillment of the bargain. In such instances, the defendant is not allowed to withdraw his guilty plea." (*Kaanehe*, *supra*, 19 Cal.3d at p. 13.)

*Kaanehe* cautioned "that a defendant should not be entitled to enforce an agreement between himself and the prosecutor calling for a particular disposition against the trial court absent very special circumstances." (*Kaanehe*, *supra*, 19 Cal.3d at p. 13.) Instead, the preferred remedy is to allow a defendant to withdraw the plea and restore the proceedings to the status quo. (*Id.* at pp. 13–14.) "Specific enforcement of a particular agreed upon disposition must be strictly limited because it is not intended that a defendant and prosecutor be able to bind a trial court which is required to weigh the presentence report and exercise its customary sentencing discretion." (*Id.* at p. 14.)

*Kaanehe* determined specific enforcement was inappropriate because a substantial possibility existed that the remedy would not completely repair the harm caused by the prosecutor's breach, and the breach was done willfully and deliberately. The Supreme Court held that, because the breach was so glaring, the defendant needed the option of either "rearraignment" for sentencing with the prosecutor's previous communications stricken from the record, or the right to withdraw his guilty pleas with the restoration of all charges and resumption of trial proceedings. (*Kaanehe*, *supra*, 19 Cal.3d at pp. 14–15.) Further proceedings had to occur before a new judge. (*Id.* at p. 15.)

In *Alvernaz*, the Supreme Court decided under what circumstances a criminal defendant could challenge a conviction and sentence when claiming a pretrial plea bargain was rejected due to ineffective assistance of counsel. (*Alvernaz*, *supra*, 2 Cal.4th at p. 928.) *Alvernaz* held a Sixth Amendment violation is present when a defendant demonstrates that ineffective representation at the pretrial stage of a criminal proceeding caused the defendant to proceed to trial even if a fair trial resulted. When such a constitutional violation occurs, the judgment must either be modified consistent with the terms of the offered plea bargain, or a new trial is required with resumption of the plea

negotiation process. (*Alvernaz*, *supra*, at p. 928.) To establish prejudice, a defendant must prove he or she would have accepted the plea bargain, and it would have been approved by the trial court. (*Id.* at pp. 940–941.)

It was noted in *Alvernaz* that the remedy of specific enforcement of a failed plea bargain is generally disfavored when it will limit the judge's sentencing discretion in light of changed circumstances between the acceptance of the plea and sentencing. "Specific enforcement of a failed plea bargain is not a remedy required by the federal Constitution." (*Alvernaz*, *supra*, 2 Cal.4th at p. 942.) As a result, *Alvernaz* held that specific enforcement of a plea offer following trial and conviction is neither constitutionally required nor consistent with the trial court's broad discretion in determining the appropriate sentence for a defendant's criminal conduct where ineffective assistance of counsel causes a defendant to reject the pretrial plea bargain. (*Id.* at p. 943.) Moreover, the Supreme Court noted that mandatory reinstatement of the plea bargain would be inconsistent with the legitimate exercise of the prosecutorial discretion involved in the negotiation and withdrawal of offered plea bargains. The prosecution could view the case very differently following a fair trial and conviction. The sentencing contemplated in the pretrial plea offer could no longer be consistent with the public interest and a prosecutor should not be locked into the proposed pretrial disposition. (*Ibid.*) Accordingly, "the appropriate remedy for ineffective assistance of counsel that has resulted in a defendant's decision to reject an offered plea bargain (and to proceed to trial) is as follows: After the granting of relief by the trial court (on a motion for new trial or in a habeas corpus proceeding) or by an appellate court, the district attorney shall submit the previously offered plea bargain to the trial court for its approval, unless the district attorney within 30 days elects to retry the defendant and resume the plea negotiation process. If the plea bargain is submitted to and approved by the trial court, the judgment shall be modified consistent with the terms of the plea bargain." (*Id.* at p. 944.) If plea negotiations are resumed, "the prosecution has acquired

as substantial bargaining leverage the circumstance of having obtained a conviction of the defendant following a trial. The right to a new trial, however, does not leave the defendant with an 'empty' remedy. A defendant is in a better position, in preparing for a new trial following trial and conviction, to evaluate the strengths and weaknesses of both the prosecution's case and the defense's case. Furthermore, such a defendant is restored the bargaining leverage often afforded by the prosecutor's desire to avoid the time and expense of a new trial and the accompanying uncertainty as to the outcome of the proceedings." (*Ibid.*)

Here, consistent with the reasoning in these opinions, it is apparent we cannot divest the trial court of its sentencing discretion. (*Alvernaz*, *supra*, 2 Cal.4th at p. 942; *Kaanehe*, *supra*, 19 Cal.3d at p. 14.) Although the present matter does not involve a finding of ineffective assistance of counsel, the remedy discussed in *Alvernaz* appears appropriate as it implements the dual concerns of protecting appellant's rights while also providing prosecutorial discretion. (*Alvernaz*, *supra*, at p. 943.)

Accordingly, upon remand, the district attorney shall submit the previously negotiated plea bargain to the trial court for its approval, unless the district attorney within 30 days elects to retry appellant and resume the plea negotiation process. Because the previously offered plea bargain included both cases, we agree with appellant that the probation case should be included within this remedy. If the plea bargain is submitted to and approved by the trial court, the judgment shall be modified consistent with the terms of the plea bargain. (*Alvernaz*, *supra*, 2 Cal.4th at p. 944.) If the plea bargain is either not submitted to the trial court or is not approved, then appellant shall be retried.[4]

---

[4]    In light of the remand, we will not address appellant's final contention that he was denied his constitutional right to effective assistance of counsel and due process. We take no position regarding the merits of appellant entering an NGI plea if appellant is retried.

**DISPOSITION**

The judgment is reversed. The sentences in both cases (case No. BF151668A & case No. BF144483A) are vacated. These matters are remanded to the trial court for further proceedings. The district attorney shall submit the previously negotiated plea bargain to the trial court for its approval, unless the district attorney within 30 days elects to retry appellant and resume the negotiation process. If the previously negotiated plea bargain is submitted and approved by the trial court, judgment shall be entered consistent with the terms of the plea bargain. If the previously negotiated plea bargain is either not submitted to the trial court or not approved, then appellant shall be retried.

_____
KANE, J.

WE CONCUR:


_____
HILL, P.J.


_____
GOMES, J.