Filed 1/30/25  P. v. Pasa CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B335449 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. SA108285) |
| v. | |
| LEFULEFU KAIO PASA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Kathryn Solorzano, Judge.  Affirmed.

Laini Millar Melnick, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Noah P. Hill and Stephanie A. Miyoshi, Deputy Attorneys General, for Plaintiff and Respondent.

Lefulefu Pasa was charged with crimes arising out of his assault on a woman. After the trial court denied Pasa's motion for mental health diversion under Penal Code[1] section 1001.36, he pled no contest to assault by means of force likely to produce great bodily injury. Pasa appeals, contending primarily that the trial court abused its discretion by finding him unsuitable for diversion because he posed an unreasonable risk of danger to public safety. We reject his contention and affirm the judgment.

## BACKGROUND

I.    Evidence at preliminary hearing

On April 14, 2023, the victim Hanh Dinh was at a liquor store. Pasa was also at the store. He followed Dinh, and they had a verbal altercation. Pasa punched Dinh in the face, knocking her to the ground. When Dinh tried to get up, Pasa dragged her to the back of the store and slammed her face into a glass display case, causing the display case to shatter. Dinh suffered lacerations to her leg and wrist, and a puncture wound to her elbow. The laceration to her wrist severed an artery, nerves, and tendons. The injuries affected Dinh's ability to continue her work as a nail technician and left her with a permanent scar.

After Pasa was arrested, he told a police officer that he did not remember being at the liquor store, but he identified himself from video surveillance of the incident. Pasa said he had two 32-ounce beers and a cocktail before the incident, adding he did not feel like himself that day.

---

[1]    All further undesignated statutory references are to the Penal Code.

II.     Motion for mental health diversion

An information charged Pasa with mayhem (§ 203; count 1), battery with serious bodily injury (§ 243, subd. (d); count 2), and assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 3).

Pasa moved for mental health diversion under section 1001.36. With his motion, Pasa submitted the report of Dr. Camy Kingston, a forensic psychiatrist. According to the report, Pasa was 26 years old when he committed the crimes. He denied a history of mental health treatment, although he endorsed having depressive symptoms for which he had been self-medicating with alcohol. In addition to alcohol, Pasa said he used marijuana, cocaine, and Xanax. He began drinking in middle school, and his drinking "took off" in college. Per day, Pasa consumed four to five "40s (Mickeys)," three to four blunts, five or six Xanax pills, and an eight ball of cocaine when he lived in Texas, where his family had moved when he was 22 years old. On the day of the incident, Pasa had smoked weed and taken three to four "40s," two Xanax pills, and a "Buzzball." Pasa did not recall the specifics of the incident.

Pasa graduated from high school and attended community college for two years, although he struggled in school. He has had various jobs and was working at a warehouse at the time of the incident. He had been arrested once before for a " 'bar fight,' " but he had no prior convictions.

After interviewing and evaluating Pasa, Dr. Kingston concluded he did not meet the criteria for an intellectual disability. But he had "deficits" and "impairments" across cognitive domains, visual mental speed, verbal processing speed,

3

and language abilities. His learning, memory, and executive functioning also were "compromised."

Dr. Kingston found that Pasa met the criteria for "alcohol use disorder, cannabis use disorder, and sedative, hypnotic and anxiolytic use disorder." Further, his abuse of substances "likely played a significant role in the commission of the charged offenses." The doctor noted that substance abuse "treatment can successfully control addiction," and Pasa would likely benefit from a dual diagnosis program which focused on both his mood symptoms and his substance abuse. "If he can maintain his sobriety and manage any potential mood symptoms, he should not theoretically pose an unreasonable risk of danger to public safety as defined in" section 1170.18.

At the hearing on Pasa's motion, defense counsel represented that she had found residential programs for her client. The trial court, however, said it was inclined to deny the motion based on the severity of the victim's injuries and the "unrelenting," "unprovoked," and "vicious" nature of the attack. Noting that Pasa had severed the victim's artery, the trial court observed that he could have killed her. The trial court described Dr. Kingston's report as "weak" and her diagnosis unclear. In response, defense counsel clarified that Pasa had impaired executive functioning and cognitive impairment, and as to mental illness and the Diagnostic and Statistical Manual of Mental Disorders (DSM) diagnosis, "it is for alcohol use disorder, cannabis use disorder, and . . . sedative hypnotic and anxiolytic use disorder."

The trial court found that Pasa was eligible for mental health diversion but not suitable for it, because of "the nature of the offense," and indicated he was capable of committing a super

4

strike, namely, attempted murder. The trial court described Pasa as exhibiting viciousness in his unprovoked and relentless attack on a woman of slight stature, who was not the aggressor and did not fight back.[2] While the trial court noted it could consider the opinion of a qualified mental health expert, the court did not find that opinion persuasive. Accordingly, the trial court denied the motion.

III.    Pasa's plea and sentence

On November 1, 2023, Pasa pled no contest to assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)) and admitted he personally inflicted great bodily injury on the victim (§ 12022.7, subd. (a)). That same day, the trial court sentenced Pasa to three years in prison, suspended execution of the sentence, placed Pasa on five years' probation, and ordered him to serve 365 days in a residential treatment program.

**DISCUSSION**

I.    Overview of mental health diversion and standard of review

Section 1001.36 authorizes pretrial mental health diversion for defendants with qualifying mental disorders. (See generally *People v. Frahs* (2020) 9 Cal.5th 618, 624, 626–627.) " 'Pretrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment."

---

[2]    The prosecutor represented that according to Pasa's booking sheet, Pasa weighed 350 pounds and was six feet four inches tall.

5

(§ 1001.36, subd. (f)(1).)  Section 1001.36's purpose is to keep people with mental disorders from entering and reentering the criminal justice system while protecting public safety, to give counties discretion in developing and implementing diversion across a continuum of care settings, and to provide mental health rehabilitative services.  (§ 1001.35; see generally *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 886.)  The mental health diversion program shall be applied as broadly as possible.  (*Frahs*, at p. 632.)

A defendant is eligible for pretrial diversion if two eligibility requirements are met.  First, the defendant has been diagnosed with a mental disorder identified in the most recent edition of the DSM, and defense counsel has provided evidence of that disorder, including a diagnosis within the last five years by a qualified mental health expert.  (§ 1001.36, subd. (b)(1).)  Second, the defendant's disorder was a significant factor in the commission of the charged offense.  (§ 1001.36, subd. (b)(2).)  If the defendant has been diagnosed with a mental disorder, then a court shall find that the disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence it was not a motivating, causal or contributing factor to the defendant's involvement in the alleged offense.  (*Ibid.*)

If a defendant satisfies the eligibility requirements, then the court must consider the defendant's suitability for pretrial diversion, which requires meeting four criteria.  (§ 1001.36, subd. (c).)  First, a mental health expert has found that the defendant's disorder would respond to mental health treatment.  (§ 1001.36, subd. (c)(1).)  Second, the defendant consents to treatment.  (§ 1001.36, subd. (c)(2).)  Third, the defendant agrees to comply with treatment as a condition of diversion, unless the defendant

6

is incompetent to consent. (§ 1001.36, subd. (c)(3).) Fourth, the defendant will not pose an unreasonable risk of danger to public safety as defined in section 1170.18, if treated in the community. (§ 1001.36, subd. (c)(4).) Section 1170.18, subdivision (c), defines an " 'unreasonable risk of danger to public safety' " as "an unreasonable risk" that the defendant will commit a new violent felony known as a super strike. The super strikes are a sexually violent offense, oral copulation with a child under 14 years old, a lewd or lascivious act involving a child under 14 years old, homicide, solicitation to commit murder, assault with a machinegun on a peace officer or firefighter, possession of a weapon of mass destruction, and any serious or violent felony punishable by death or life without parole. (§§ 1001.36, subd. (c)(4), 667, subd. (e)(2)(C)(iv).)

The trial court has discretion to order the defendant to diversion if it finds the defendant both eligible and suitable. (§ 1001.36, subd. (a); *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1080 ["Ultimately, however, diversion under section 1001.36 is discretionary, not mandatory, even if all the requirements are met."].)

We review a trial court's ruling on a motion for mental health diversion for an abuse of discretion, but we review its factual findings for substantial evidence. (*People v. Whitmill* (2022) 86 Cal.App.5th 1138, 1147 (*Whitmill*).) " ' "A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence." ' " (*People v. Doron* (2023) 95 Cal.App.5th 1, 9.) " 'On appeal, we must view the evidence in the light most favorable to the People and must presume in support

7

of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' [Citation.] 'Although we must ensure the evidence is reasonable, credible, and of solid value, nonetheless it is the exclusive province of the trial judge or jury to determine the credibility of a witness and the truth or falsity of the facts on which that determination depends.' " (*People v. Gerson, supra*, 80 Cal.App.5th at p. 1079.)

II.     The trial court did not abuse its discretion by denying the motion for diversion

Pasa contends that the trial court here, first, committed an error of law in finding him ineligible for mental health diversion and, second, abused its discretion by finding him unsuitable for mental health diversion. We disagree.

A.     *Eligibility*

Pasa bases his first contention on statements the trial court made expressing doubt that Dr. Kingston had clearly diagnosed him with a mental disorder identified in the DSM.[3] The trial court, for example, questioned the doctor's diagnosis, saying, "The report itself does indicate alcohol abuse, but an alcohol disorder? I'm not convinced of that at all, not by reading this report. Marijuana use disorder? Again, these are D.S.M. disorders. The abuse of Xanax? … This is your burden. It's certainly one that I don't believe has been satisfied. Again, I'm not concerned in telling you … what you need to do to shore this up, because frankly, in the end, I'm gonna come up to the same conclusion."

---

[3]     There is no dispute on appeal that Pasa had a qualifying mental disorder.

8

Notwithstanding the trial court's apparent doubts that Pasa met the eligibility requirements, once Dr. Kingston diagnosed Pasa with a qualifying mental disorder, the trial court had to find it was a significant factor in the commission of the charged offense, absent clear and convincing evidence his disorder was not a motivating, causal or contributing factor to his involvement in the alleged offenses. (§ 1001.36, subd. (c).) The trial court made no such finding here by clear and convincing evidence. Therefore, Pasa satisfied the eligibility requirements, notwithstanding any doubts the trial court had.

Even if the trial court was mistaken about eligibility requirements, the error was harmless. (See, e.g., *People v. Watts* (2022) 79 Cal.App.5th 830, 836 [court's erroneous belief that prosecutorial consent to diversion was necessary was harmless]; *People v. Jefferson* (2019) 38 Cal.App.5th 399, 409 [remand for trial court to consider defendant's eligibility for diversion unnecessary where trial court made comments clearly indicating it would find defendant ineligible].) Notwithstanding the trial court's doubts about Pasa's diagnosis, it found him eligible for mental health diversion, stating, "He is eligible because the offense is not an offense that is specified as an ineligible offense." Therefore, any misunderstanding the trial court had regarding eligibility was harmless because the trial court considered the second prong of the diversion analysis, i.e., Pasa's suitability for diversion, and denied diversion based on Pasa's unsuitability for diversion and not on his ineligibility for it.

B. *Suitability*

Pasa next contends that the trial court abused its discretion in denying his motion because there was insufficient evidence he was unsuitable for diversion on the ground he posed

9

an unreasonable risk to public safety.  Pasa initially argues that the trial court again misunderstood the law.  However, we presume a trial court correctly understood applicable law unless the record affirmatively shows otherwise.  (*People v. Stowell* (2003) 31 Cal.4th 1107, 1114; *People v. Giordano* (2007) 42 Cal.4th 644, 666; *People v. Dawson* (2021) 69 Cal.App.5th 583, 592 [judge's statements must disclose incorrect concept of relevant law embodied in the basic ruling and not merely in secondary remarks].)

Pasa argues that the trial court misunderstood that to find him unsuitable for diversion, it had to find he would pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community.[4]  (§ 1001.36, subd. (c)(4).)  Ultimately, this requires an assessment whether the defendant is " 'likely to' " commit a super strike.  (*People v. Moine* (2021) 62 Cal.App.5th 440, 450 (*Moine*).)  Here, however, the trial court said that the "nature of this offense … indicates that [Pasa] is *capable of* committing a super strike, which would be an attempted 187."  (Italics added.)  Although the trial court did not track the statute's language, its failure to do so fails to establish that the trial court misunderstood the law.  Rather, the entirety of the trial court's comments show it focused on the "unrelenting," "unprovoked," and "vicious" nature of Pasa's crime.  In doing so, the trial court impliedly found that Pasa posed an unreasonable risk of danger to public safety because he was likely to commit a super strike, even if the trial court did not use those words.  We therefore decline to find that the trial court's stray comment

---

[4]    There is no dispute that Pasa satisfied the other suitability criteria in subdivision (c) of section 1001.36.

10

reflected a misunderstanding of the law that affected its basic ruling.

Next, Pasa argues there is insufficient evidence he posed an unreasonable danger to public safety on the ground he was likely to commit a super strike. In making this determination, the "court may consider the opinions of the district attorney, the defense, or a qualified mental health expert, and may consider the defendant's treatment plan, the defendant's violence and criminal history, the current charged offense, and any other factors that the court deems appropriate." (§ 1001.36, subd. (c)(4).) Nothing in the statute "precludes a trial court from relying primarily, or even entirely, on the circumstances of the charged offense or offenses in denying a motion for diversion." (*People v. Bunas* (2022) 79 Cal.App.5th 840, 862; accord, *People v. Graham* (2024) 102 Cal.App.5th 787, 799 [nature and manner of charged crimes, particularly two super strikes, rendered defendant likely to commit another super strike].) In *Bunas*, at pages 850 to 851, for example, the defendant hit his girlfriend with a flashlight, dragged her out of a room, and struck her in the head with a machete. The appellate court held that the trial court did not err by denying diversion " 'based solely on the offense.' " (*Id.* at p. 862.)

Similarly here, the trial court relied primarily or entirely on the nature of the charged offenses in denying Pasa's diversion motion. It found Pasa's attack on the victim to be unprovoked, unrelenting, and so vicious that he could have killed her. Substantial evidence supports that finding. The evidence was that Pasa approached the victim, whom he did not know, in a store. He punched her in the face, dragged her to a glass display case, and slammed her into it so hard that the case shattered,

11

and glass shards severed the victim's artery. We therefore cannot find that the trial court abused its discretion by denying diversion based on the random, violent nature of the attack.

In response, Pasa argues that the absence of prior convictions shows he is unlikely to commit a super strike in the future. However, while Pasa does not have any prior convictions, he admitted to Dr. Kingston that he had once been arrested after a bar fight. Therefore, Pasa did have some history of prior violence, which also supports the trial court's unsuitability finding.

To further support his argument that his lack of a prior conviction establishes he was not an unreasonable risk to public safety, Pasa cites several cases: *People v. Oneal* (2021) 64 Cal.App.5th 581, *Moine*, *supra*, 62 Cal.App.5th 440, and *Whitmill*, *supra*, 86 Cal.App.5th 1138.

In *People v. Oneal*, *supra*, 64 Cal.App.5th 581, the defendant was charged with various crimes involving two incidents. In the first incident, the defendant entered a woman's apartment and asked to use the phone, but left when she said a man was in the house. (*Id.* at p. 585.) The defendant then confronted the woman outside and offered her money to use the phone. He left when she threatened to call the police. In the second incident, the defendant followed a woman and grabbed her purse, although he was unsuccessful in taking it. (*Ibid.*) The trial court denied the defendant's diversion motion in part " 'based on his behavior prior.' " (*Id.* at p. 593.) However, it was undisputed that the defendant's criminal history did not involve any super strikes. The *Oneal* court therefore found it unclear how that prior behavior supported the dangerousness finding. (*Ibid.*) In this case, Pasa also did not have any criminal history

12

that involved a super strike.  Even so, *Oneal* is not on point because the trial court here did not rely on Pasa's criminal history to establish his dangerousness.  It relied on the nature of the current offense, which the trial court in *Oneal* did not do.  And, as we have said, a trial court may rely on the nature or circumstances of the pending charges to deny diversion.  (*People v. Bunas*, *supra*, 79 Cal.App.5th at p. 862.)

Next, the defendant in *Moine*, *supra*, 62 Cal.App.5th 440, was charged with assault and criminal threats.  The assault charge arose out of Moine's fistfight with another person after they disagreed on whether a television in a medical facility's waiting room should be on.  The criminal threats charges happened after Moine, unhappy with a prescription he was given while he was at a medical facility, threatened to shoot people.  (*Id.* at pp. 444–445.)  The trial court denied Moine's diversion motion because his current offenses involved " 'acts of violence.' " (*Id.* at p. 447.)  The appellate court, however, found that the record did not support a finding that Moine was likely to commit a super strike, because the pending charges were not super strikes, two psychiatrists had found that Moine posed a low risk of committing assault, and his prior criminal history consisted merely of four misdemeanor convictions (three relating to drug or alcohol related offenses and one hit and run).  (*Id.* at p. 450.)

*Moine* is also distinguishable.  First, two psychiatrists opined that the defendant posed a low risk of committing another assault.  In contrast, Dr. Kingston found that if Pasa "can maintain his sobriety and manage any potential mood symptoms, he should not theoretically pose an unreasonable risk of danger to public safety."  This fell short of the clear medical findings in *Moine* that the defendant posed a low risk of dangerousness, and

13

therefore justified the trial court's finding here that Dr. Kingston's opinion was unpersuasive. Second, *Moine* is distinguishable because the nature of Pasa's current offense involved extreme violence, even if it was not a super strike.

To the extent that Pasa cites *Moine* for the principle that the pending offenses must be super strikes to make a dangerousness finding, we disagree. The statute already disqualifies defendants charged with certain offenses, including some super strikes such as murder. (§ 1001.36, subd. (d).) Therefore, being charged with certain super strikes already renders defendants ineligible as a matter of law for diversion. But nothing in the statute suggests that being charged with a super strike is a prerequisite to a finding that a defendant poses an unreasonable risk to public safety, even if such a charge might weigh in favor of an unsuitability finding.

In *Whitmill*, *supra*, 86 Cal.App.5th at pages 1142 to 1143, the defendant, who had indicated he was not feeling well, warned a friend not to " 'walk up' " on him, fired a gunshot into the air, and then told his girlfriend he would kill her. He was charged with being a felon in possession of a firearm, discharging a firearm with gross negligence, and criminal threats. (*Id.* at pp. 1143–1144.) The trial court denied the defendant's diversion motion on the ground that his threat to kill and firing a gun into the air demonstrated he was likely to commit a super strike. (*Id.* at p. 1147.) The appellate court disagreed based on the defendant's record of nonviolent drug offenses. Further, the totality of circumstances surrounding the current offenses did not suggest he was likely to commit a super strike. (*Id.* at pp. 1151–1156.) *Whitmill* is also distinguishable. Although Pasa had no prior convictions, the circumstances surrounding his current

14

offenses were very violent. Pasa did not stop at threats like the *Whitmill* defendant. Pasa violently attacked a stranger in a store, inflicting severe injuries on her.

Finally, Pasa argues that the trial court "signed off on" a plea deal that "looks an awful lot like mental health diversion while denying" him the benefits of diversion. He thus notes the "logical[ ] inconsistency" in denying him mental health diversion on the ground he was likely to commit a super strike, while simultaneously releasing him to the same residential treatment center he would have entered had he been granted diversion. Pasa again cites *Moine, supra*, 62 Cal.App.5th at page 451, which found a logical inconsistency in denying diversion on the ground the defendant was likely to commit a super strike, while releasing him into the community on a bond which required a finding he was not likely to inflict great bodily injury on persons in the community. Here, however, Pasa was released to a residential treatment program, and the trial court made no similar finding about the likelihood he would inflict great bodily injury on persons in the community. Also, the trial court said it disagreed "with the offer in this case, but that's not for me."[5] In any event, any seeming inconsistency in denying Pasa diversion but accepting a plea that allowed him to go to the residential treatment facility he would have gone to had diversion been granted is an insufficient ground to find an abuse of discretion.

---

[5] It is therefore unclear what the trial court thought regarding its ability to reject the plea. (See generally *People v. Loya* (2016) 1 Cal.App.5th 932, 947 [trial court may reject negotiated plea agreement if it believes it is not fair, but it may not change agreement without parties' consent].)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


EDMON, P. J.


We concur:


ADAMS, J.


HANASONO, J.*

---

\*      Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.