Filed 4/22/21  P. v. Copeland CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER MICHAEL COPELAND,<br><br>    Defendant and Appellant. | F078836<br><br>(Super. Ct. No. F14905554)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Fresno County.  James Kelley, Judge.

Conness A. Thompson, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters and Michael P. Farrell, Assistant Attorneys General, Carlos A. Martinez and Catherine Tennant Nieto, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

## INTRODUCTION

Defendant Christopher Michael Copeland was charged with several offenses in relation to an incident in which he and two companions forced themselves into a home where three minors were present, and eventually departed with several items of value. Relatively early in the case, the People extended to defense counsel an offer of 14 years in prison, which would have involved Copeland pleading to one count of home invasion robbery, admitting his personal use of a firearm, and admitting a prior prison term enhancement. Defense counsel did not communicate the offer to Copeland.

Copeland eventually learned of the prior offer, when a newly assigned prosecutor informed him it was no longer available. Thereafter, the People recognized they were constitutionally required, under the circumstances, to re-extend the offer. At the next court date, Copeland accepted the plea agreement and he pled no contest to one count of home invasion robbery (Pen. Code,[1] § 213, subd. (a)(1)(A)) and admitted the firearm allegation (§ 12022.53, subd. (b)).[2] The remaining counts and allegations were dismissed.

Prior to sentencing, the People brought a motion to reject the plea agreement, arguing it did not serve the interests of society and was not just. The court ultimately granted the People's motion and rejected the negotiated plea agreement. The People then amended the information to add a prior strike allegation, a prior serious felony allegation, and an additional prior prison term allegation, all arising out of a single federal conviction.

Copeland eventually pled no contest to home invasion robbery (§ 213, subd. (a)(1)(A)) and admitted a firearm enhancement (§ 12022.53, subd. (b)), a great bodily injury enhancement (§ 12022.7, subd. (a)), a prior strike (§§ 667, subds. (b)–(i), 1170.12,

---

[1]     Undesignated statutory references are to the Penal Code.

[2]     He also admitted an additional charge in a separate case.

subd. (a)(d)), and a prior serious felony enhancement (§ 667, subd. (a)(1)).  He was sentenced to a determinate term of 25 years.

On appeal, Copeland argues the court abused its discretion in rejecting the initial negotiated plea for a 14-year term.  We conclude the court did not abuse its discretion, and we affirm.

## FACTUAL BACKGROUND[3]

On December 14, 2013, Copeland, his girlfriend, and an additional female codefendant forced their way into a home.[4]  Present in the home were three minors, ages 17, 12, and four.  Copeland struck the 17-year-old victim in the face with a handgun and zip-tied his hands behind his back.  Copeland then pointed the handgun at the 12-year-old victim and told him not to move.  One of Copeland's codefendants picked up the four-year-old victim and brought him to sit near the 12-year-old.  She questioned the minors and took the 12-year-old's phone.  When the zip-ties on the 17-year-old victim broke, Copeland duct-taped the victim's hands behind his back.  Copeland also placed duct tape over the mouth and eyes of the 17-year-old and 12-year-old.  Copeland asked the minors various questions regarding the location of money and a safe.  Eventually the victims heard what sounded like a suitcase being dragged across tile and Copeland and his companions left.

The 17-year-old victim was transported to the hospital, where he received several stitches.  The victims' mother reported that the rooms of the home were ransacked, her jewelry box was empty, and the family was missing a video game console and $3,000 in cash.

---

**3**    The parties stipulated that the police reports and preliminary hearing transcript provided a factual basis for Copeland's eventual plea.  Accordingly, this factual background is taken from the police reports, as summarized in the report of the probation officer.

**4**    Copeland's codefendants are not parties to this appeal.

## RELEVANT PROCEDURAL HISTORY

On June 10, 2014, Copeland was charged with home invasion robbery (§ 213, subd. (a)(1)(A); count 1); three counts of false imprisonment by violence (§ 236; counts 2–4); and assault with a firearm (§ 245, subd. (a)(2), count 5). As to each count, the People alleged Copeland had personally used a firearm. (§§ 12022.53, subd. (b) [count 1], 12022.5, subd. (a) [counts 2–5].) The People also alleged four prior prison term enhancements (§ 667.5, subd. (a)).

On September 24, 2014, Copeland appeared with his attorney, Eric Green, for a pre-preliminary hearing. In discussions with Green, the People extended an offer of 14 years in prison, which would have involved Copeland pleading to count 1 and admitting the firearm enhancement and one prior prison term enhancement. Green requested, and was granted, a continuance to speak with his client.[5] It is undisputed that Green did not convey the offer to Copeland.

Thereafter, the preliminary hearing was continued several times. On March 17, 2015, the People moved to amend the complaint to add a charge of possession of a firearm by a felon. (§ 29800, subd. (a)(1).) At a hearing on March 19, 2015, the motion was granted and the People were ordered to file the complaint at the next court date on April 9, 2015. However, the record does not reflect that a first amended complaint was ever filed.

Thereafter, the parties appeared before the court multiple times, and the preliminary hearing was repeatedly continued. Eventually, on May 5, 2016, the People filed a second amended complaint. The second amended complaint added a great bodily injury enhancement (§ 12022.7, subd. (a)) to count 1, and a new charge of possession of a firearm by a felon (§ 29800, subd. (a)(1); count 6).

---

[5]     The facts regarding the People's offer are taken from the People's later motion to reject the plea bargain.

The preliminary hearing was conducted on May 18, 2016. An information was filed on May 23, 2016. In addition to the charges in the second amended complaint, the information added a great bodily injury enhancement (§ 12022.7, subd. (a)) to count 5. Copeland was arraigned on June 2, 2016, and entered pleas of not guilty.

On August 18, 2016, Green declared a doubt as to Copeland's competency. At the same hearing, the prosecutor stated that the People intended, upon the reinstatement of criminal proceedings, to file an amended information alleging Copeland's prior federal conviction as a strike.[6] At the next court date, the court found Copeland competent to stand trial and criminal procedures were reinstated.

After multiple additional continuances, Copeland appeared before the court on July 6, 2017, with attorney Stephen Quade, who stated he was making a special appearance for Charles Barrett, an attorney who had made a special appearance for Green at the prior hearing.[7] After counsel and the court discussed a continuance, Copeland stated, "I got something to say." The following discussion occurred:

> "THE DEFENDANT: There was — at the very beginning, there was an offer on the table. I was never told about it until we changed DA's to Mr. Wells.[8] The day that he took the case, he explained this was not on

---

[6] The court received a copy of the proposed amended information, but it is not contained in the record. Nor was the amended information filed after the reinstatement of criminal proceedings, apparently due to inadvertence on the part of the various prosecutors assigned to the case. It was not until a July 18, 2017 hearing that the People realized the information originally filed on May 23, 2016, remained the operative pleading and that no prior strike had been alleged. Notwithstanding that realization, the People again forgot about their failure to amend, and continued to argue Copeland was charged with a prior strike until the September 18, 2017 hearing on the People's motion to reject the plea.

[7] The court minutes reflect that Green remained counsel of record until July 18, 2017, when Kendall Simsarian was appointed to represent Copeland.

[8] Senior Deputy District Attorney Wells appeared on behalf of the People from February 2015 through September 2016.

the table.  I don't know why.  And it's now — I was never offered that initial deal.  Mr. Green appeared three times in nine months.

"THE COURT:  What was that offer?

"THE DEFENDANT:  That offer was 14 years.

"THE COURT:  That offer is no longer on the table?

"[SEAN BRUNTON, THE PROSECUTOR]:  Your Honor, it is not. We're well past settlement conference.  However, I just want to go back to the record.  This case has been going on for three years now.  I want to confirm when that offer was made.

"THE DEFENDANT:  Monica Diaz.[9]

"THE COURT:  That was about five DA's ago.

"THE DEFENDANT:  Right.  I was never offered it.  Never mind. Never mind.

"THE COURT:  Are you making that offer today, that you would plead for 14 years?

"THE DEFENDANT:  Yes.

"THE COURT:  And what would you be pleading to?

"THE DEFENDANT:  To basically whatever you're trying to do with me.

"THE COURT:  I'm sure the People would want Count One.

"THE DEFENDANT:  Okay.

"THE COURT:  At a minimum.  But I don't think you get there with just that.

"THE DEFENDANT:  … I've been here three years dealing with this case and it's postponed, postponed, postponed.  It's raised a toll on my family, my relationship.  Raised a toll on a lot of things.  My mental psyche among other things.  And when I was — when I heard that, I was like — I

---

**9**    Deputy District Attorney Monica Diaz appeared on behalf of the People from August 2014 through January 2015.

was asked — you know, you already know his answer, Blah, blah, blah. I mean, I'm taking the — because if I was offered that, I would have been out of court years ago. I would've been done and on my way years ago.

"THE COURT:· What's the current offer?

"MR. BRUNTON: Your Honor, there isn't a current offer and I'm actually having trouble getting to 14 years. [¶] Was it 14 or 16?

"THE DEFENDANT: 14.

"MR. BRUNTON: It's actually a little bit difficult to get to 14 years as charged.

"THE DEFENDANT: I mean, it's on the court reporter's records because it was not —

"MR. BRUNTON: I'm not saying -- I don't doubt there was an offer made. I am having trouble finding it.

"THE COURT: I'm not sure how that would be given, Count One and the —

"MR. BRUNTON: Strike and the enhancement.[10] That's my issue as well. 16 appears to be the lowest conceivable offer, which is why I'm —

"THE COURT: Well, my suggestion is to put this over until a week from Tuesday, have your attorney here, and the DA can consider that offer or consider making an offer. The Court would consider trying to settle this with counsel. If there's a possibility of doing that, we will. If not, we'll deal with your representation on that date.

"THE DEFENDANT: Okay.

"MR. BRUNTON: And I would like to clarify for the record, People's — there was a 14-year offer made, it appears, in September 2014. 14 years. However, there's no notes as to how that was reached.

"THE DEFENDANT: I was never given the chance to take that offer or I would have. I don't understand how if my lawyer doesn't tell —

---

**10** As indicated above, the People had not yet amended the information to allege Copeland suffered a prior strike offense.

give me the offer, how would I be aware of that, you know?  If it was there, but it — if counsel was effective, I would have been out of here."

On July 18, 2017, Green was relieved as counsel of record and Kendall Simsarian was appointed to represent Copeland.  Brunton, on behalf of the People then made the following record regarding the prior plea offer:

> "[I]t was represented at the last court date that Mr. Copeland was not conveyed a prior offer of 14 years while he was represented by attorney Eric Green.  Through separate investigations and a review of the preliminary hearing transcript, I could not find any evidence that we made that offer on the record.  I believe in the People's notes, it does appear to be the case that Mr. Copeland, as far as we are able to determine, never received, nor rejected that offer.
>
> "Given the history of the case, it does appear that we are required through case law to maintain that offer.  However, somewhat complicated by the amendments which have been received now apparently not added in this case.  I have to enter discussions with Mr. Simsarian at the next court date.  The offer will be withdrawn.  However, today, until the next court date, the offer will remain on the table.  Now, how we will achieve that, we'll have to be in discussions."

On August 10, 2017, the parties again appeared before the court.  Copeland was represented by Simsarian.  Brunton was not present, and Bob Whalen appeared on behalf of the People.  Simsarian memorialized the plea agreement that had been reached with the People, which involved Copeland serving a total term of 14 years in relation to the instant case, as well as a separate case he was facing.  Copeland then pled no contest to count 1 and admitted the firearm enhancement.  He also pled no contest to possession of a weapon in a penal institution (§ 4502, subd. (a)) in his other case.  The remaining counts and enhancements were dismissed.  Simsarian asked if sentencing could be conducted the same day.  The People agreed and waived the right to a probation report.  Copeland himself also initially agreed to proceed with sentencing, but then asked for a continuance.  Sentencing was therefore continued.

On September 8, 2017, the parties appeared for sentencing.  Bruton was not present and Jessica Choi appeared on behalf of the People.  Simsarian noted that the case

involved a stipulated sentence and that he and Copeland were prepared to proceed. Copeland objected to any continuance. Choi stated that Brunton was on vacation, and she requested a continuance because she had been told by others in her office that Brunton "may have been interested in submitting a written motion on the sentencing, addressing some legal issues that may have come up in the interim between the plea and today's date." The matter was continued.

On September 12, 2017, the People, through Brunton filed a motion to reject the plea bargain. The People conceded, for purposes of the motion, that Green's performance was deficient in failing to present the original offer to Copeland. To the extent Green was thereby ineffective, the People argued the appropriate remedy was for the People to re-extend the original offer, which had been done. However, the People also argued the court nonetheless had the duty to reject the offer because the plea bargain was not in the best interests of society and was not just. More specifically, the People argued the plea bargain should be rejected because Copeland had a lengthy criminal history and his conduct in the instant case did not warrant a mitigated sentence.[11] Simsarian opposed the motion and argued the plea bargain should be specifically enforced.

The motion was heard on September 18, 2017. The court expressed disappointment with the way the case had been handled by the People, given the seriousness of the charges. The court opined:

> "There may have been sixth amendment violations by counsel. Again, I'm not making that finding, but I understand the People made this offer. It was a business decision by the People that there may have been a sixth amendment violation that he could have used on appeal later and this would have put the victims in a position that maybe have to relitigate this.

---

[11]     The People also argued that the stipulated sentence was unlawful because the People were not permitted to strike a prior strike allegation. As we have explained, however, the People had not filed the amended information alleging a prior strike.

9.

"A 14-year term is not a slap on the wrist. However, the conduct was fairly egregious, as I read. So maybe it's a little bit light, but we're looking at somebody who has accepted the People's offer in good faith, signed on the dotted line for 14 years in prison and then all of a sudden the People are saying, you know, that's not good enough and it just puts the Court in a position that is unique.

"I've never seen anything like this before where the People have made the offer and then want the Court to reject it."

The court took the matter under advisement, and on September 25, 2017, heard further argument and rejected the negotiated plea on the basis of aggravating factors involving the offense and Copeland's criminal history.

On December 8, 2017, the People filed a first amended information. The first amended information added a prior strike allegation (§§ 667, subd. (b)–(i), 1170.12, subd. (a)–(d)), a prior serious felony enhancement (§ 667, subd. (a)(1)), and an additional prior prison term enhancement (§ 667.5, subd. (b)), all based on the same federal offense.[12]

On January 3, 2019, Copeland pled no contest to count 1, admitted the firearm and great bodily injury enhancements to count 1, and admitted the prior strike and a prior serious felony enhancement.[13] The remaining counts and allegations were dismissed.

Sentencing was conducted on February 8, 2019. On count 1, the court sentenced Copeland to the middle term of six years, doubled due to the prior strike, plus 10 years

---

[12]     The People previously alleged Copeland had suffered four prior prison terms within the meaning of section 667.5, subdivision (a). In the first amended information, it instead was alleged that Copeland had suffered five prior prison terms within the meaning of section 667.5, subdivision (b).

[13]     In the plea colloquy, Copeland admitted the prior strike, as well as a "prior violent felony conviction pursuant to [section] 667.5, subsection (a)." He was not asked to admit a prior serious felony conviction pursuant to section 667, subdivision (a)(1), although the plea form states that he would "admit 5-year prior," and his counsel clearly indicated his intent to admit the prior serious felony enhancement. The prior serious felony enhancement was later stricken, and any error in the colloquy is therefore harmless. Additionally, although the court's minute order mistakenly states that a five-year term was imposed for a prison prior pursuant to section 667.5, subdivision (a), this sentence was not included in the abstract of judgment.

for the firearm enhancement and three years for the great bodily injury enhancement, for an aggregate sentence of 25 years.  The prior serious felony enhancement was stricken.

Copeland timely filed a notice of appeal.  He additionally requested, and was granted, a certificate of probable cause.

## DISCUSSION

Copeland contends his counsel was ineffective in failing to communicate the People's initial plea offer, and that the court abused its discretion in rejecting the negotiated plea.  For purposes of this appeal, we assume for the sake of argument that defense counsel failed to communicate the People's initial offer and that such a failure would constitute ineffective assistance of counsel.  Nonetheless, we conclude Copeland was afforded the appropriate remedy when the People re-extended their prior offer.  Upon Copeland's acceptance of the offer, the acceptance or rejection of the negotiated plea was within the court's discretion.  As we explain, we conclude the court did not abuse its discretion in rejecting the negotiated plea.

I.     APPLICABLE LAW

A claim of ineffective assistance of counsel in the context of a plea bargain is governed by the two-part test set forth in *Strickland v. Washington* (1984) 466 U.S. 668. (*Missouri v. Frye* (2012) 566 U.S. 134, 140, 149 (*Frye*).)  Under *Strickland,* " '[a] defendant claiming a violation of the federal constitutional right to effective assistance of counsel must satisfy a two-pronged showing:  that counsel's performance was deficient, and that the defendant was prejudiced, that is, there is a reasonable probability the outcome would have been different were it not for the deficient performance.' " (*People v. Woodruff* (2018) 5 Cal.5th 697, 736.)

Counsel's failure to communicate a plea offer made by the People constitutes deficient performance.  (*Frye, supra,* 566 U.S. at p. 145; accord, *In re Alvernaz* (1992) 2 Cal.4th 924, 934 (*Alvernaz*).)  To show prejudice from such failure, a defendant must show a reasonable probability that (1) he would have accepted the offer had he been

11.

afforded effective assistance of counsel, (2) the plea would have been entered without the prosecution cancelling it or the court refusing to accept it, and (3) the end result of the criminal process would have been more favorable to the defendant. (*Frye,* at p. 147; *Alvernaz,* at pp. 940–941.)

The remedy for any such violation "should be 'tailored to the injury suffered … and should not unnecessarily infringe on competing interests.' " (*Lafler v. Cooper* (2012) 566 U.S. 156, 170 (*Lafler*); accord, *Alvernaz, supra,* 2 Cal.4th at p. 942.) When a Sixth Amendment violation causes a defendant to reject the offer of a plea bargain and the defendant is later convicted on more serious charges, "[t]he correct remedy … is to order the [People] to reoffer the plea agreement."[14] (*Lafler*, at p. 174.) The trial court then must exercise its discretion to determine, in light of all the circumstances of the case, whether to sentence the defendant pursuant to the plea agreement. (*Id.* at pp. 174–175.) A court may reject a plea only in the exercise of sound judicial discretion (*Santobello v. New York* (1971) 404 U.S. 257, 261–262), and the scope of that discretion is derived from the law governing the court's acceptance or rejection of a plea. (*Lafler,* at p. 174; *United States v. Knight* (D.C. Cir. 2020) 981 F.3d 1095, 1108.)

Under California law, the scope of the court's discretion to approve or reject a negotiated plea is broad. (*People v. Johnson* (1974) 10 Cal.3d 868, 873.) A court exercising its discretion to approve or reject a proposed plea bargain is "charged with the protection and promotion of the public's interest in vigorous prosecution of the accused, imposition of appropriate punishment, and protection of victims of crimes. [Citation.] For that reason, a trial court's approval of a proposed plea bargain must represent an informed decision in furtherance of the interests of society .…" (*Alvernaz, supra,* 2 Cal.4th at p. 941.)

---

**14** We acknowledge that Copeland did not reject the People's initial offer of a plea bargain, but rather failed to accept it because he was unaware of it. However, this distinction is immaterial to our analysis.

## II. ANALYSIS

Here, the People investigated the circumstances surrounding the plea offer and conceded it was "highly likely" that Green failed to communicate the People's plea offer to Copeland, and that such performance would be considered deficient. Furthermore, the People conceded that Copeland would have accepted the offer, and that doing so would have resulted in a sentence more favorable to him than what he ultimately received. Although the People argue Copeland cannot demonstrate a reasonable probability the court would have accepted the plea, the record contradicts this argument. The court did accept Copeland's plea and was prepared to proceed immediately to sentencing on August 10, 2017. We have no basis to speculate that the court would have done otherwise in 2014, when the People's offer was initially tendered. We therefore assume, for purposes of this appeal, that Copeland was prejudiced by Green's deficient performance and that Green provided constitutionally ineffective representation. (*Frye, supra,* 566 U.S. at p. 147.)

However, Copeland has already received the remedy required for this violation. The People, recognizing the constitutional magnitude of the issue, properly re-extended the plea offer, and Copeland accepted. (*Lafler, supra,* 566 U.S. at p. 174.) The court then was required to determine, in the sound exercise of its discretion, whether to approve or reject the negotiated plea. (*Id.* at pp. 174–175; accord, *Alvernaz, supra,* 2 Cal.4th at p. 944.)

In rejecting the negotiated plea, the court considered the arguments of the parties, relevant caselaw, and the conduct of the People. The court further articulated its reasoning as follows:

> "The crime involved great violence. The defendant used others to
> participate. There was planning and sophistication. The defendant
> certainly engaged in violent conduct. He has seven prior felony convictions
> and four parole violations, which is another factor he was unsatisfactorily
> on parole. He has a prior prison term. And pursuant to [section] 1192.7[,

13.

subdivision] (c), he engaged in confining the victims.  And if I take as a factor in mitigation the drug addiction, that's one factor in mitigation against eight, which weigh heavily in aggravation.  So the Court cannot in good conscience impose the plea bargain of the mitigated term.  It just isn't there.  [¶] … I just can't see where the 14-year offer would be fair in the interest of justice and fair to the victims in this case."

Based on the foregoing, we cannot say the court abused its discretion in concluding the negotiated plea did not further the interests of society, or in rejecting the plea on that basis.  (*Alvernaz, supra,* 2 Cal.4th at p. 941; *People v. Loya* (2016) 1 Cal.App.5th 932, 948.)

Nonetheless, Copeland argues the court's prior willingness to proceed immediately to sentencing based on the stipulated sentence demonstrates that the court's subsequent rejection of the plea agreement was arbitrary.  However, when Copeland elected not to proceed with immediate sentencing, the court ordered a probation report prepared.  The probation report provided additional details regarding the offenses,[15] Copeland's criminal history, and his probation status at the time the offenses were committed, facts which were not available to the court at the time the plea was taken.  More fully informed by that report, the court exercised its discretion to withdraw its prior approval of the negotiated plea.  We disagree that the court's rejection of the plea based on new information constitutes an abuse of discretion.

---

**15**    The judge who rejected the plea did not preside over the preliminary hearing and thus was not familiar with the facts underlying Copeland's offenses until they were summarized in the probation report.  We therefore disagree with Copeland's contention that the judge could not have learned anything new in the time between the plea and sentencing because he had presided over the matter for years and was "intimately familiar" with the case.

## DISPOSITION

The judgment is affirmed.

FRANSON, J.

WE CONCUR:


LEVY, Acting P.J.


PEÑA, J.