Filed 7/23/21  P. v. Dunsmore CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D077762 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS215653) |
| DARRYL DUNSMORE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Theodore M. Weathers, Judge.  Affirmed as modified.

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos, Kathryn Kirschbaum and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

This is the third[1] appeal of defendant Darryl Dunsmore in this case, following his 2010 conviction for attempted voluntary manslaughter and two counts of assault with a deadly weapon and by force likely to cause great bodily injury. In this appeal, defendant contends the court abused its discretion in denying his motion for substitution of counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*). He also contends, and the People agree, that the court erred in recalculating his actual custody credits as of the date of his July 15, 2020 resentencing. As we explain, we agree with the parties that the court failed to properly calculate defendant's actual custody credits. In all other respects, we affirm the judgment.

OVERVIEW[2]

Facts

"Dunsmore had a long history of harassing his ex-wife. Joseph C., a friend of Dunsmore, tried to convince Dunsmore to leave his ex-wife alone. In December 2007, Joseph agreed to meet with Dunsmore to help him recover property that he had left at his ex-wife's home. Terry R., Joseph's friend,

---

[1] Dunsmore currently has a fourth appeal pending in this case. (See *People v. Dunsmore*, Dec. 14, 2020, case No. D078348.) We denied Dunsmore's request to consolidate the instant appeal with D078348. In the alternative, Dunsmore requested we take judicial notice of D078348, in which he lodged medical records that were not considered by the trial court in the instant case when, as discussed *post*, it denied his *Marsden* motion. We now deny Dunsmore request to take judicial notice of D078348, including the aforementioned medical records, inasmuch as "[r]eviewing courts generally do not take judicial notice of evidence not presented to the trial court." (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3.)

[2] This summary is primarily derived from our decision in *People v. Dunsmore* (Oct. 8, 2019, D074656 [nonpub. opn.] (*Dunsmore II*), following our remand in *People v. Dunsmore* (Dec. 22, 2011, D057645) [nonpub. opn.] (*Dunsmore I*).

2

drove Joseph over to Dunsmore's home.  Dunsmore was sitting in his full-sized van, with the motor running, when Terry and Joseph arrived and got out of their car.  Dunsmore turned on the headlights of his van, revved its engine, and sped straight toward Joseph and Terry.  Dunsmore crashed his van at high speed into Terry's car, knocking down Terry, mangling his knee and destroying his car.  Dunsmore accelerated and turned the van toward Joseph, who was standing near a telephone pole.  Dunsmore flattened the telephone pole and chased Joseph through neighbors' front yards.  Dunsmore knocked Joseph down from behind with his van, after driving the van through a chain-link fence and over a brick retaining wall.  While leaning his head out of the van's window, Dunsmore drove the van back and forth over Joseph's body several times, breaking several bones and inflicting other injuries.  Joseph had lingering injuries at the time of trial." (*Dunsmore II*, *supra*, D074656, at p. 3.)

Procedural History

"In 2010, a jury convicted Dunsmore of one count of attempted voluntary manslaughter as a lesser included offense of murder ([Pen. Code,[3]] §§ 192, subd. (a), 664; count 1), and two counts of assault with a deadly weapon and by force likely to cause great bodily injury (§ 245, subd. (a)(1); counts 2 and 3).  Allegations regarding personal use of a deadly and dangerous weapon (§ 1192.7, subd. (c)(23)) and personal infliction of great bodily injury (§ 12022.7, subd. (a)) were also found true, along with true findings that Dunsmore had a prior prison conviction (§ 667.5, subd. (b)), that was also a prior serious felony conviction (§ 667, subd. (a)(1)), and a prior

---

[3]    All further statutory references are to the Penal Code unless otherwise indicated.

strike conviction (§§ 667, subd[s]. (c) & (e)(1), 1170.12, subd. (c)).” (*Dunsmore II*, *supra*, D074656, at p. 4.)

"The trial court sentenced Dunsmore to a total term of 22 years in prison.  The court imposed the upper term on count 1, attempted voluntary manslaughter, doubled to 11 years due to the prior strike conviction, plus three years, consecutive, for personal infliction of great bodily injury, and one year, consecutive, for use of a weapon [fn. omitted]; on count 2, assault with a deadly weapon on the same victim, the court imposed the upper term, doubled, of eight years, plus a consecutive term of three years for personal infliction of great bodily injury and a term of one year for the weapon enhancement, all stayed pursuant to section 654; and on count 3, assault with a deadly weapon on a second victim, the court imposed a consecutive term of two years, or one-third of the middle term doubled, plus one year for the weapon enhancement.  Punishment on the weapon enhancement was stayed pursuant to section 1385.  The court also imposed one year, consecutive, for the prison prior (§ 667.5, subd. (b)), stayed pursuant to *People v. Jones* (1993) 5 Cal.4th 1142 . . . , and imposed five years, consecutive, for the prior serious felony conviction (§ 667, subd. (a)).  The court reserved jurisdiction over direct restitution to the victim and imposed the minimum restitution fine (§ 1202.4, subd. (b)) and suspended parole revocation fine (§ 1202.45) of $200 each.  It refused to impose other mandatory fines, fees, surcharges, or penalty assessments.  The trial judge stated, 'Let me tell you my philosophy on fines.  They want a zillion and a half dollars in fines.  Okay.  If I'm going to send a man to prison, whether, sir, it's for two years or 22 years, I am not tacking on humongous restitution fines and fees.  I don't believe in it.' " (*Dunsmore II*, *supra*, D074656, at pp. 4–5.)

"On appeal [in *Dunsmore I*], we affirmed the conviction of guilt and remanded for the imposition of mandatory fees. Specifically, we stated: 'The portion of the sentence related to fines, fees, surcharges, and penalty assessments is reversed. The matter is remanded to the trial court with directions to identify and impose all mandatory fines, fees, surcharges, and penalty assessments. . . . In all other respects, the judgment is affirmed.' " (*Dunsmore II, supra*, D074656, at p. 5.)

Remand

"The presiding judge at the time of sentencing retired and a different judge handled the case on remand. The court imposed a restitution fine in the amount of $1,000 and an additional suspended parole revocation restitution fine of $1,000. The court imposed the mandatory criminal conviction assessment of $90 (Gov. Code, § 70373), a criminal justice administration fee in the amount of $154 (Gov. Code, § 29550.1), and a court operations assessment in the amount of $90 (§ 1465.8). [Fn. Omitted.]" (*Dunsmore II, supra*, D074656, at pp. 5–6.)

In *Dunsmore II*, we held the court did not abuse its discretion in refusing to replace appointed counsel, Craig Leff, before the hearing on remand, after Dunsmore claimed in the *Marsden* hearing that he allegedly had a conflict of interest with his attorneys from the Office of Assigned Counsel (OAC) because he had sued them.[4] (*Dunsmore II, supra*, D074656, at p. 2.) Dunsmore also claimed in the *Marsden* hearing that he had been denied a fair trial, despite the fact the sole issue on remand was imposition of mandatory fees.

---

4     The record shows as new counsel from OAC was appointed to represent Dunsmore, he would amend his civil lawsuit to add such counsel to create this alleged "conflict of interest."

5

We also held in *Dunsmore II* that the court on remand erred in increasing the restitution and parole revocation fines from $200, the minimum fine a court could impose when Dunsmore committed his crime in 2007, to $1,000 (§§ 1202.4 & 1202.45); that the court erred in imposing the court operations assessment under section 1465.8; that Dunsmore on remand could raise the ability to pay issue based on what was then the newly decided case of *People v. Dueñas* (2019) 30 Cal.App.5th 1157; that although it was a "close issue . . . due to the violence in this case and Dunsmore's lengthy history of violence" (*Dunsmore II*, *supra*, D074656, at p. 14), on remand he also could raise whether the court should exercise its newly found discretion and strike his prior serious felony conviction in light of Senate Bill No. 1393, which was effective January 1, 2019 and which amended sections 667, subdivision (a) and 1385, subdivision (b) (see Stats 2018, ch. 1013, §§ 1–2); that various other sentencing errors needed correction in the amended abstract of judgment; and that the stayed, one year prison-term enhancement under former section 667.5, subdivision (b) should be stricken. (*Dunsmore II*, at p. 17.)

Current Appeal

At the July 15, 2020 resentencing, the court held another *Marsden* hearing to address Dunsmore's ex parte request that attorney Leff be dismissed. Before explaining why he wanted new counsel appointed, Dunsmore questioned whether the trial judge should even be conducting the hearing because Dunsmore claimed the judge had only responded to one of two peremptory challenges Dunsmore had filed and because the same judge had sentenced him to Patton State Hospital. Dunsmore thus argued the judge had a conflict of interest. Dunsmore added, "I hear bias and prejudice preceding the hearing based on hearsay evidence—not even evidence—the

6

prosecutor concerning the fact whether or not premeditation occurred in this case." The court, however, noted it had denied Dunsmore's peremptory challenges on July 6 and continued with the *Marsden* hearing.

Dunsmore next argued he wanted new counsel appointed because the court and his current counsel were relying on the representation of the prosecutor about "[him] being convicted of premeditation" in 2010, which he claimed was "false." Dunsmore further argued that his appointed counsel was unprepared for the July 15 resentencing hearing; that "Mark-Robert Bluemel" was his newly retained attorney, who, according to Dunsmore, was allegedly seeking a "forensic examination" of Dunsmore to determine whether he had a "developmental disability"; that he believed the court was "psychologically abus[ing]" him as were others that were supposedly representing his interests; that he had been "continuously" sending "scientific information" to the court regarding his alleged disability; and that he was denied due process when he was originally sentenced in 2010.

During the *Marsden* hearing Dunsmore also informed the court that he had a "series of declarations" or motions he wanted to file in support of his request that the court strike the five-year enhancement for the serious felony prior. Dunsmore noted that his appointed counsel, attorney Leff, should have been filing these "declarations" or motions on his behalf and that counsel's failure to do so showed counsel was not adequately representing his interest.

The record shows the court asked to hear from attorney Leff. Before he could speak, Dunsmore interrupted and stated, "This last time he [i.e., attorney Leff] failed to do what he was ordered to do by the Court . . . . He let you railroad him as well as me about my rights at that hearing. It is not just limited to sentencing. I have a right of discovery. I have a Constitutional right to discovery. I have a Constitutional right to the disability hearing. [¶]

7

There's all kinds of stuff. You're denying—you're railroading through. You're denying me of my rights again. You're denying me the right that I had a fair trial. You're trying to get this man to do it. There's a clear conflict of interest."

In response to the court's questioning, attorney Leff stated that he has been a state and federal criminal defense attorney for 21 years; that he had completed between 15 and 20 criminal trials in his legal career; that he had researched the law on newly amended sections 667, subdivision (a) and 1385, subdivision (b) and was prepared to argue the motion to strike the five-year enhancement that he had filed and the People had opposed; and that he previously had filed a motion to continue the resentencing hearing because he wanted to "achieve [his] clients goals or to take the appropriate steps necessary to do so," as it was not out of the question Dunsmore would ask for a *Marsden* hearing and appointment of new counsel.

The court next asked Dunsmore if he had anything else to say. Dunsmore responded, "Yes. He [i.e., attorney Leff] violated the code of ethics when he failed to declare to me that he was uninsured. I wrote to you about that and you told me that it was a self-serving statement."

After hearing more argument from Dunsmore, the court denied his *Marsden* motion. The court found that attorney Leff provided effective assistance of counsel and that there was no basis to relieve OAC. Regarding Dunsmore's representation that his new counsel was Mark-Robert Bluemel, the court noted its records from a March 6, 2020 hearing showed that Mark-Robert Bluemel appeared for that hearing, as did attorney Leff. At this hearing, Mark-Robert Bluemel "advised the Court that he was only appearing for today's hearing and that he was not retained on this case. [¶] The Court has—since March 6th, has not received any contact from Mr.

8

Mark-Robert Bluemel that he is retained or that he is the counsel of record on this case. [¶] . . . [¶] The Court has not received any substitution of [c]ounsel or communication from Mark-Robert Bluemel; therefore, at this time the Court does find that Mr. Dunsmore has been adequately represented. The Court finds no basis to relieve [OAC]." Dunsmore in response stated, "I object and hear fraud."

After the *Marsden* hearing, the court next addressed attorney Leff's motion to continue the resentencing hearing. The record shows the papers are date-stamped June 10, 2020, the original hearing was set for June 11, and ostensibly because of the pandemic, the papers were not filed-stamped by the court until June 23, 2020. Attorney Leff in his papers argued a "brief continuance" was necessary because Dunsmore had (1) filed a federal action under 42 USC § 1983 including against San Diego County and the District Attorney's Office; (2) filed a state action against OAC that, as noted, "included this counsel"; and (3) complained to the State Bar regarding an alleged discovery violation by the District Attorney's Office, which investigation was ongoing.

Attorney Leff in his papers noted a continuance was also warranted because in early May 2020 he had suffered serious health problems. Concerned his health situation could get worse if he contracted the coronavirus, attorney Leff stated he was unable to personally visit with Dunsmore and instead had to rely on telephonic communication, making preparation for the original June 11 hearing challenging. In addition, Dunsmore had indicated to attorney Leff that he wanted to proceed in propria persona. In his June 10 declaration in support of the continuance, attorney Leff stated he *then* was unprepared for the resentencing hearing that was scheduled for June 11, not only because of the lack of

9

communication with Dunsmore, but also because he recently had "received numerous documents from Mr. Dunsmore regarding his case and [he had] not had the health time to review and discuss them with [Dunsmore]."

At the July 15 rescheduled hearing, attorney Leff explained that Dunsmore believed he had been "wrong[ed] by the various authorities in this matter" and therefore had complained to the State Bar and had filed a federal action, as noted *ante*. Attorney Leff thus argued the court should continue the resentencing hearing until the issues raised by Dunsmore had been resolved, as it was possible resentencing would be unnecessary if Dunsmore was successful in any one of his actions.

The court noted that the resentencing issue was a "very narrow" one mandated by this court's decision in *Dunsmore II*. It also noted that there has been "more than adequate time over the past year" since *Dunsmore II* issued in early October 2019 to address the issues raised in that decision; and that attorney Leff had "filed briefs in support of the request to strike the serious felony prior." The court noted "that—to say that Mr. Dunsmore is a litigious individual is an understatement. He has filed numerous ex parte applications, all of which have been dealt with by the court. [¶] He has been up to the Court of Appeal on a number of occasions. He continues to raise issues related to his trial from 2009 and his sentencing in 2010, all of which have been dealt with over and over and over again by this Court as well as the Court of Appeal. [¶] The time for the resentencing is now. The motion to continue is denied."

After taking up the fines, fees, and assessments discussed in *Dunsmore II*, the court turned to the serious felony prior. Attorney Leff argued the court should strike the five-year enhancement because Dunsmore had "several health conditions that would result if he became infected' with the

10

coronavirus; that although Dunsmore received a long sentence, "it was not a life sentence"; and thus that the court, in the interest of justice, should exercise its discretion and dismiss the five-year enhancement.

The prosecutor argued the court should impose the enhancement under section 667, noting: "[W]hen the defendant was originally sentenced . . . his history at that time as well as the facts [of this] case for which he was convicted, both of which are very serious, very violent cases." The prosecutor further noted Dunsmore's serious prior offense involved a criminal threat, case No. CS179057, in which Dunsmore told a neighbor, "I will fucking burn down your house with you and your family in it." When Dunsmore was questioned about this previous incident, the prosecutor represented that Dunsmore had said "his neighbor should be afraid of him and, in fact, his neighbor was." The prosecutor also noted Dunsmore had threated his stepfather and while out on bail "for these [section] 422 cases, he committed further domestic violence against [his ex-wife Rose R.,] who eventually had to get a restraining order against him which he failed over and over again to comply with."

The prosecutor argued it was in this context that Dunsmore committed the offenses in the instant case, in which he used his car to run over two individuals, causing life-threating injuries to one of the victims who ended up having a stroke and was still recovering from his injuries a year later. Even as the instant case was pending, the prosecutor noted that Dunsmore continued to harass Rose R., leading to his rearrest. The prosecutor thus maintained that striking the five-year enhancement would not be in furtherance of justice.

In reply, attorney Leff argued that Dunsmore was "not the same man" when he committed the offenses in this case, and reiterated that Dunsmore is

11

disabled and has "very significant health issues"; that while in prison, Dunsmore would not receive the required medical treatment he could receive if released; that while in prison, there had been no other incidents of violence; and that in light of the pandemic and these other factors, the court should exercise its discretion and strike the five-year enhancement.

The court then asked Dunsmore if wanted to address the court. Dunsmore apologized for his "emotional outbursts," noted the prosecutor had misstated the facts about his criminal history including his committing acts of "violence," as he claimed that none of his offenses had been charged as a violent crime; that the court in exercising its discretion should also consider his disability as a "mitigating factor[]," as this disability caused him to "make irrational, emotional outbursts" that he has suffered since before the age of 18; that he was "remorseful" for committing the offenses in this case; and that through mental health services he has received "tools and people that can help [him] maintain a safe environment for [himself], and those around [him,] so that these acts that have occurred in the past and anything that may occur in the future do not reoccur in a manner that is dangerous."

After hearing additional argument, the court declined to strike the five-year enhancement. The court read into the record Dunsmore's original sentencing report prepared by probation, which noted Dunsmore had a "lengthy criminal history which covers more than 27 years," and which further noted: "[Dunsmore] is a habitual offender. It is clear that the defendant had several opportunities to stop his negative actions and redirect his behavior. [¶] In the instant case, the behavior that the defendant displayed did not appear to be that of a man concerned for his safety. He could have driven away but chose to remain in the area and commit this offense. [¶] He blames others for his choices. He is without remorse and

12

despite the physical and emotional harm he has caused, he continued to view himself as the victim."

The court stated that it also had reviewed the trial transcripts in declining to exercise its discretion to strike defendant's serious felony prior. After correcting certain sentencing errors identified in *Dunsmore II*, and calculating Dunsmore's custody credits, it sentenced Dunsmore to 21 years in prison, as noted.

DISCUSSION

I

<u>*Marsden*</u>

A. *Guiding Principles*

"The seminal case regarding the appointment of substitute counsel is *Marsden, supra*, 2 Cal.3d 118, which gave birth to the term of art, a '*Marsden* motion.' " (*People v. Smith* (1993) 6 Cal.4th 684, 690.) *Marsden* held that a defendant has a right to substitute counsel on a proper showing that the constitutional right to counsel would otherwise be substantially impaired. (*Marsden, supra*, at p. 123; see *People v. Nakahara* (2003) 30 Cal.4th 705, 718.)

"The legal principles governing a *Marsden* motion are well settled." (*People v. Lara* (2001) 86 Cal.App.4th 139, 150.) When a defendant pursuant to *Marsden* seeks substitution of appointed counsel, " 'the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance. A defendant is entitled to relief if the record clearly shows that the appointed counsel is not providing adequate representation or that defendant and counsel have become embroiled in such an irreconcilable conflict that ineffective representation is likely to result.' " (*People v. Taylor* (2010) 48 Cal.4th 574, 599 (*Taylor*).) "A

13

trial court should grant a defendant's *Marsden* motion only when the defendant has made 'a substantial showing that failure to order substitution is likely to result in constitutionally inadequate representation.' " (*People v. Hines* (1997) 15 Cal.4th 997, 1025.) "A defendant does not have the right to present a defense of his own choosing, but merely the right to an adequate and competent defense." (*People v. Welch* (1999) 20 Cal.4th 701, 728.)

"We review the denial of a *Marsden* motion for abuse of discretion." (*Taylor*, *supra*, 48 Cal.4th at p. 599.) "Denial is not an abuse of discretion 'unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel.' " (*Ibid.*)

B. *Analysis*

Dunsmore contends that the trial court abused its discretion in denying his *Marsden* motion because attorney Leff allegedly admitted he was unprepared for the originally scheduled June 11, 2020 resentencing hearing when he filed his motion for continuance a day earlier. As noted *ante*, in that motion attorney Leff asked for a "brief continuance" because he had suffered severe medical issues in May 2020; had been unable to have face-to-face communication with Dunsmore because of the pandemic; Dunsmore had given him several documents that he had yet to review; Dunsmore also had expressed a willingness to appear in propria persona at resentencing; and Dunsmore had filed a complaint with the State Bar regarding the District Attorney's Office and had filed both a federal and state action, the latter of which included attorney Leff as a party.

However, the record shows the resentencing hearing did not take place until July 15, 2020, more than a month *after* attorney Leff moved for a short continuance. In connection with the July 15 hearing, attorney Leff had filed a motion to strike the five-year enhancement, had researched the law, and

14

following the *Marsden* hearing, had stated he was prepared to argue the motion. In addition, the record shows attorney Leff did in fact make cogent arguments in asking the court to strike the five-year enhancement, as noted *ante*, including repeatedly pointing out that Dunsmore allegedly had "very significant" health issues that put him at risk because of the pandemic; that Dunsmore was a "changed man" and already had served a lengthy sentence for his offenses; and that striking the five-year enhancement in light of Dunsmore's health issues served the interest of justice.

We thus reject Dunsmore's claim that attorney Leff was unprepared for the July 15 resentencing hearing. We find on this record substantial evidence supporting the court's finding that attorney Leff provided effective assistance of counsel in connection with the overarching issue at resentencing: whether to strike the five-year enhancement under newly amended sections 667 and 1385. We thus conclude Dunsmore had failed to show, much less "clearly show[]" (see *Taylor*, *supra*, 48 Cal.4th at p. 599), that attorney Leff was not providing adequate representation.

Moreover, the record shows the court in fact exercised its discretion in declining to strike the enhancement. (See *In re Marriage of Gray* (2007) 155 Cal.App.4th 504, 515 [recognizing the general rule that a failure to exercise discretion is "itself an abuse of discretion"].) As noted, the court relied on the original sentencing report from probation and reread the original trial transcripts in declining to strike the five-year enhancement.

In addition, this court in *Dunsmore II* noted it was a "close issue" whether the court on remand "would exercise its discretion to reduce Dunsmore's sentence, due to the *violence* in this case and Dunsmore's lengthy *history of violence*." (*Dunsmore II*, *supra*, D074656, at p. 6, italics added.) Out of an abundance of caution, however, we left that issue for the trial court.

15

(*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [noting remand is appropriate when the trial court does not clearly indicate what it would have done had it been aware of the full scope of its discretion].)

Finally, even *if* the court erred in failing to substitute counsel, we conclude that error was harmless beyond a reasonable doubt. (See *People v. Sanchez* (2011) 53 Cal.4th 80, 92 (*Sanchez*) [noting *Marsden* error is only harmless if a reviewing court can " 'conclude beyond a reasonable doubt that th[e] denial of the effective assistance of counsel did not contribute to the defendant's conviction' "]; accord, *People v. Loya* (2016) 1 Cal.App.5th 932, 945 [concluding the "standard for prejudice regarding a denied *Marsden* motion is under *Chapman v. California* (1967) 386 U.S. 18."].)

Indeed, we note Dunsmore on appeal has not even argued the court erred in denying his motion to strike the five-year enhancement. For this reason alone we conclude any alleged error in failing to substitute counsel is harmless beyond a reasonable doubt. (See *Sanchez*, *supra*, 53 Cal.4th at p. 92.)

In any event, the record shows both attorney Leff and Dunsmore himself aggressively argued at the July 15 resentencing that the court should exercise its newly acquired discretion pursuant to sections 667 and 1385 and strike his serious felony prior. Although Dunsmore on appeal faults attorney Leff, as we have noted there is no indication Dunsmore was deprived of effective assistance of counsel given the record in this case, including— despite Dunsmore's vehement and ongoing objections otherwise—the acts of *violence* he committed both in his prior serious felony and in the instant offenses. We thus conclude even assuming the court erred under *Marsden* in failing to substitute counsel, it was harmless beyond a reasonable doubt. (See *Sanchez*, *supra*, 53 Cal.4th at p. 92.)

## II

## Custody Credits

In resentencing Dunsmore, the court calculated actual and section 2933.1 credits from the date of Dunsmore's arrest until June 3, 2010, the date of Dunsmore's original sentencing, for a total of 921 days credit. Dunsmore contends the court was required to calculate all actual credits from the time of arrest until July 15, 2020, the date of resentencing. He therefore argues he is entitled to an additional 3666 days of actual credits for a total of 4587 custody credits. The People agree.

"When, as here, an appellate remand results in a modification of a felony sentence during the term of imprisonment, the trial court must calculate *actual time* the defendant has already served and credit that time against the 'subsequent sentence.' " (*People v. Buckhalter* (2001) 26 Cal.4th 20, 23 (*Buckhalter*); § 2900.1 [providing that when a sentence is modified while in progress, the time already served "shall be credited upon any subsequent sentence [the defendant] may receive upon a new commitment for the same criminal act or acts"].) Thus, when a trial court on remand modifies a defendant's sentence, it is obliged to credit the defendant in its new abstract of judgment "with all *actual* days he [or she] had spent in custody, whether in jail or prison, up to that time." (*Buckhalter*, at p. 37.)

We agree with the parties that the abstract of judgment must be amended to correctly reflect Dunsmore total custody credits of 4587. (See *People v. Mitchell* (2001) 26 Cal.4th 181, 185 [stating the general rule that it is proper and important to correct errors and omissions in abstracts of judgment].)

DISPOSITION

The judgment is modified to award Dunsmore 4587 days of custody credit.  As so modified, the judgment is affirmed.  The trial court is directed to prepare and forward to the Department of Corrections and Rehabilitation an amended abstract of judgment that has been modified accordingly.

BENKE, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.

18