Filed 1/27/22  P. v. Rios CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ROY RIOS,<br><br>    Defendant and Appellant. | F082132<br><br>(Super. Ct. No. F19903136)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Houry A. Sanderson, Judge.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Julie A. Hokans and Clara M. Levers, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Poochigian, Acting P. J., Peña, J. and Smith, J.

Defendant Roy Rios pled no contest pursuant to a negotiated plea agreement to assault with a deadly weapon and admitted a great bodily injury enhancement. On the date of sentencing, defendant moved the court to appoint new counsel pursuant to *People v. Marsden* (1970) 2 Cal.3d 118. The trial court denied his *Marsden* motion. On appeal, defendant contends that the denial of his *Marsden* motion was reversible error. The People disagree. We affirm.

## PROCEDURAL SUMMARY

On November 19, 2019, the Fresno County District Attorney filed an information charging defendant with attempted murder[1] (Pen. Code, §§ 187, subd. (a), 664;[2] count 1) and assault with a deadly weapon (§ 245, subd. (a)(1); count 2). As to count 2, the information alleged that defendant personally inflicted great bodily injury in the commission of the offense (§ 12022.7, subd. (a)).

On August 20, 2020, pursuant to a plea agreement, defendant pled no contest to count 2 and admitted the great bodily injury enhancement. The plea agreement included a stipulated seven-year term of imprisonment on count 2. In exchange for his plea, the trial court dismissed count 1 on the People's motion.

On October 29, 2020, defendant requested appointment of new counsel. After conducting a closed hearing, the trial court denied defendant's request.

On the same date, the trial court imposed the stipulated sentence of seven years as follows: on count 2, four years (the upper term) plus a three-year great bodily injury enhancement.

On December 7, 2020, defendant filed a notice of appeal.

---

[1] The information originally alleged that the charged attempted murder was premeditated and deliberate. On January 24, 2020, the trial court set aside the premeditated and deliberate allegations on defendant's motion.

[2] All further statutory references are to the Penal Code.

2.

## **FACTUAL SUMMARY**[3]

On May 4, 2019, defendant was involved in a bar fight with P.N. During that fight, defendant drew a knife and repeatedly stabbed P.N., causing great bodily injury. As P.N. fled the bar, defendant pursued him and continued to attack him with a knife.

## **DISCUSSION**

Defendant contends that the trial court erred in denying his post-plea *Marsden* motion to appoint new counsel. The People disagree, as do we.

### **A. Additional Background**

On October 29, 2020, in a closed hearing, the trial court permitted defendant to explain the reasons why he believed substitute counsel should be appointed.

Defendant told the court that he has posttraumatic stress disorder. At the most recent appearance, when he entered his no contest plea, he was under considerable stress and asked his counsel questions to which she would not give him a direct answer. She also refused to give defendant a direct answer regarding the strength of his self-defense case, stating both that it was "self-defense all the way" and that a self-defense case was "going to be hard to prove." He further explained that on a previous occasion, he had prepared three or four motions that his counsel refused to file on his behalf. He also told the court that his counsel misled him regarding, or withheld, the evidence: she originally told defendant that law enforcement had recovered a "weapon full of blood" then told him "[t]hey don't have it[;] they assume [defendant] threw it away …." She did not permit defendant to watch the full video of the bar fight. She did not obtain P.N.'s criminal record.

---

**3** In the plea colloquy, defendant agreed that the trial court could consider the preliminary hearing transcript to find a factual basis for his plea. The record before us does not contain a transcript of the preliminary hearing. However, the trial court described its review of the preliminary hearing transcript for the section 995 motion before it. Our factual summary is drawn from the information and the trial court's description of the evidence presented at the preliminary hearing.

Defendant was further dissatisfied that his counsel "[had not] presented any evidence or witnesses" to support his defense of self-defense. Instead, she repeated to defendant the prosecutor's threat to refile charges, including attempted premeditated first degree murder if he did not accept the plea agreement. She pressured defendant to enter into a plea agreement rather than discussing trial strategy. Defendant did not fully understand the plea agreement that he entered into—he was unsure whether he would serve an additional full seven years or if he would receive credit for the time he had already served against the seven-year term. Defendant did not trust his attorney; he was unsure whether his attorney was working to help him or to help the prosecutor. Nevertheless, defendant did not seek to withdraw from the plea agreement.

Defendant's counsel described her experience and background. She had been at the public defender's office for 15 years and an attorney for almost seven years, she was presently assigned to the major crimes team, was a certified criminal law specialist, had tried at least 30 cases, and conducted training for newer attorneys. Most of her present appointments were to cases where the defendants faced life sentences.

Defendant's counsel was assigned the case on May 22, 2019. She explained to defendant at the outset of her appointment that the prosecutor could amend the complaint to allege attempted premeditated murder, for which he could face imprisonment for life. She sent discovery requests because she saw that her file did not contain all the evidence. She visited defendant on June 14, 2019, but did not yet have a copy of any of the videos of the bar fight. At that time, she learned it was defendant's position that he acted in self-defense.

Defendant's counsel met with defendant again on July 15, 2019, and showed him four videos depicting the bar fight. She explained that they could argue that he acted in self-defense. However, she also explained that the jury would have to determine whether he acted in self-defense and the difficulties proving that he acted in self-defense. For

instance, she explained that defendant would have to testify, and she told him that none of the witnesses to the bar fight said anything that would be helpful to his defense.

Defendant's counsel obtained additional videos of the bar fight. She explained that "the stuff [they] were hoping was there was just not there." Further, her investigator spoke to witnesses to the bar fight. She recommended against calling those witnesses because she opined that it could "make his case worse." She showed defendant photographs of P.N. and his injuries, provided him copies of the jury instructions, and visited defendant as often as she could in light of COVID-19 limitations.

As trial approached, the prosecutor conveyed a settlement offer and mentioned that he was considering dismissing the cause and refiling with the premeditation allegation that was dismissed upon her motion. Defendant's counsel relayed the offer to defendant and the prosecutor's mention that he might refile with the premeditation allegation. She told defendant that it was his decision regarding whether he should go to trial, but she did not "sugar coat" the risks of his defense. She was prepared to go to trial.

Defendant's counsel addressed the motions that she refused to file on defendant's behalf. First, she told defendant that he had the right to file a *Marsden* motion if he was unsatisfied with her representation. Defendant did not file a *Marsden* motion at that time. Second, she noted that the other motions were "in [her] opinion, frivolous or just motions that do[ not] exist …." After reviewing those motions, she sent defendant a draft of her trial brief and her in limine motions.

Defendant's counsel also explained the confusion regarding whether a knife was recovered. She told the court that two knives were recovered from defendant's vehicle on the night he was arrested. Neither had blood on it. She decided not to have the knives tested for DNA because it was clear that defendant had stabbed P.N. and the only issue was whether he acted in self-defense. She opined that testing a knife "could only further hurt [defendant]."

Defendant's counsel further explained why she did not share P.N.'s criminal history with defendant—"[t]here was nothing to share in that regard. … There[ was] nothing for [her] to use to impeach him."

Finally, defendant's counsel told the court that she had explained to defendant the presentencing custody credits he would receive if he entered a plea agreement. She told defendant (and the court admonished defendant at the change of plea hearing) that his credit earning after sentencing would be limited pursuant to section 2933.1 because the offense was a violent felony offense.

After hearing the evidence, the trial court concluded that defendant's counsel provided adequate assistance and that no irreconcilable conflict had arisen such that ineffective assistance of counsel was likely to result. On that basis, she denied defendant's motion.

## B. Analysis

A criminal defendant has the right to assistance of counsel. (Cal. Const., art. I, § 15; U.S. Const., 6th Amend.; *Marsden*, *supra*, 2 Cal.3d at p. 123.) This right may include the right to have appointed counsel discharged if it is shown that failure to do so would substantially impair or deny the right to assistance of counsel. (*Marsden*, at p. 123.) "The legal principles governing a *Marsden* motion are well settled." (*People v. Lara* (2001) 86 Cal.App.4th 139, 150.) "When a defendant seeks new counsel on the basis that his appointed counsel is providing inadequate representation … the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of inadequate performance." (*People v. Smith* (2003) 30 Cal.4th 581, 604 (*Smith*).) Under *Marsden* and its progeny, " 'substitute counsel should be appointed when … the defendant has shown that a failure to replace the appointed attorney would substantially impair the right to assistance of counsel [citation], or, stated slightly differently, if the record shows that the first appointed attorney is not providing adequate representation or that the defendant and the attorney have become embroiled in such an

irreconcilable conflict that ineffective representation is likely to result [citation].' " (*People v. Sanchez* (2011) 53 Cal.4th 80, 89.)

A trial court's inquiry is sufficient to develop a record for review when the court gives the defendant "full opportunity to air all of his complaints, and counsel to respond to them." (*Smith*, *supra*, 30 Cal.4th at p. 606.)

We review a court's denial of a *Marsden* motion for abuse of discretion. (*People v. Orey* (2021) 63 Cal.App.5th 529, 568.) A denial is not an abuse of discretion "unless the defendant has shown that a failure to replace counsel would substantially impair the defendant's right to assistance of counsel." (*Smith*, *supra*, 30 Cal.4th at p. 604.) The reviewing court should consider: " ' "(1) [the] timeliness of the motion; (2) adequacy of the court's inquiry into the defendant's complaint; and (3) whether the conflict between the defendant and his attorney was so great that it resulted in a total lack of communication preventing an adequate defense." ' " (*Id*. at p. 606.) To the extent there are credibility questions between defendant and counsel at a *Marsden* hearing, a trial court is entitled to accept counsel's explanation. (*People v. Jones* (2003) 29 Cal.4th 1229, 1245.)

Here, defendant made his *Marsden* motion on the date scheduled for the sentencing hearing. The trial court considered the motion on its merits and did not deny the motion as untimely. This consideration does not impact our review in this case.

Next, the trial court permitted defendant a full and uninterrupted opportunity to voice his grievances, permitted defendant's counsel to generally respond before directing her to each of defendant's grievances, and then permitted defendant to reply to his counsel's responses. Before ruling on defendant's motion, the trial court repeatedly asked defendant if "there [was] anything else that [he] wished to tell [the court] other than what [he had] already said." Ultimately, defendant responded that there was not. The trial court thoroughly inquired regarding the details of defendant's complaints and defendant's counsel responded on each issue.

The trial court also reasonably concluded that defendant's counsel had been an effective advocate and that the relationship between defendant and his counsel had not deteriorated to the point that his counsel could not continue to be an effective advocate. Defendant's counsel apprised defendant of the plea agreement that was offered to him and explained the risk of going to trial. Her advice regarding the risk of going to trial was based, at least in part, upon her concerns regarding the strength of defendant's self-defense case. She explained that her investigator had spoken to witnesses at the bar and she had viewed the videos from the bar fight. She did not plan to call witnesses because their statements would have "ma[d]e his case worse." She also expressed concerns regarding the videos depicting the stabbing, but not depicting "the stuff [they] were hoping was there"—i.e., not depicting P.N. posing an imminent threat of serious bodily injury or death to defendant. Defendant's counsel was not ineffective nor did a conflict exist between defendant and his counsel such that she could not continue to effectively represent him. Defendant's statement that he did not trust his defense counsel does not require us to come to a contrary conclusion. (*People v. Taylor* (2010) 48 Cal.4th 574, 600 ["mere ' "lack of trust in, or inability to get along with," ' counsel is not sufficient grounds for substitution"]; see *People v. Cole* (2004) 33 Cal.4th 1158, 1192 [" 'the trial court need not conclude that an *irreconcilable* conflict exists if the defendant has not tried to work out any disagreements with counsel and has not given counsel a fair opportunity to demonstrate trustworthiness' "].)

Further, even if the trial court erred in failing to permit defendant substitute counsel, any error was harmless beyond a reasonable doubt. (*People v. Loya* (2016) 1 Cal.App.5th 932, 945.)

In this case, defendant did not obtain a certificate of probable cause. Defendant contends that no certificate of probable cause was required. He is only partially correct. Without a certificate of probable cause, defendant's challenges on appeal are limited to grounds that arose after the entry of the plea which do not impact the validity of the plea.

(Cal. Rules of Court, rule 8.304(b)(3); accord, § 1237.5.) Because the plea agreement included a stipulated term of imprisonment, any challenge to the sentence necessarily implicates the validity of the plea and is therefore precluded for failure to obtain a certificate of probable cause. (Cf. *People v. Vera* (2004) 122 Cal.App.4th 970, 977 [no certificate of probable cause was necessary where the defendant entered into a plea agreement with various sentencing options and challenged the denial of his postplea *Marsden* motion].) Further, because the trial court did not have discretion to deviate from the plea agreement (*People v. Stamps* (2020) 9 Cal.5th 685, 700), substitute defense counsel could have made no meaningful difference at the sentencing hearing.[4] Any error in granting defendant's *Marsden* motion was therefore harmless beyond a reasonable doubt.

## DISPOSITION

The judgment is affirmed.

---

[4] Moreover, during the *Marsden* hearing, defendant told the court that he did not seek to withdraw his no contest plea. With defendant's expressed desire not to withdraw from the plea agreement, substitute counsel could have made no conceivable difference in the outcome of the case.